**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**BRAZ COLEMAN**                                                                           **PLAINTIFF**

**VERSUS**                                        **CIVIL ACTION NO. 3:22-cv-00621-TSL-RPM**

**LAUDERDALE COUNTY, et al.**                                                  **DEFENDANTS**

<u>**REPORT AND RECOMMENDATION**</u>

Proceeding *pro se* and *in forma pauperis*, Plaintiff Braz Coleman is an inmate currently housed as a pretrial detainee at the Lauderdale County Detention Facility ("LCDF") in Meridian, Mississippi. [9] at 1. On October 24, 2022, he filed this civil action under 42 U.S.C. § 1983, alleging false arrest, illegal search and seizure, denial of his right to a speedy trial, denial of due process, denial of adequate medical care, and unconstitutional living conditions at LCDF. Plaintiff names as Defendants Lauderdale County, Sergeant Smith, Billie Sollie, Ticia Marlow, Southern Health Partners ("SHP"), and Sergeant Allen Wyman. The Court held an Omnibus Hearing on April 25, 2023, giving Plaintiff a chance to clarify his claims.[1] At that time, Plaintiff elected not to consent to proceed before the magistrate judge. (Minute Entry, Apr. 25, 2023).

Before the Court are two motions. On July 25, 2023, Plaintiff filed a Motion [48] for Preliminary Injunction and Temporary Restraining Order, which is unopposed. On August 7, 2023, Defendants Lauderdale County, Smith, and Sollie ("the County Defendants") filed a Motion [49] for Summary Judgment, and Defendants Marlow and SHP ("the Medical Defendants") later filed

---

[1] *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authorizing the magistrate judge to "hold an evidentiary hearing" to allow a *pro se* plaintiff to provide a "more definite statement"), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 (1989). The Omnibus Hearing Transcript is available on the Court's docket as Document 32 and will be cited herein as "(Tr.)."

a Joinder [51] in same.[2] Defendants' Motion [49] is opposed. *See* [52]. For the following reasons, the undersigned recommends that Plaintiff's Motion [48] for Preliminary Injunction and Temporary Restraining Order be denied. The undersigned further recommends that the Motion [49] for Summary Judgment and Joinder [51] in same be granted in part and denied in part. Plaintiff's claims against all Defendants arising after he was incarcerated at LCDF should be dismissed without prejudice for failure to exhaust administrative remedies. Plaintiff's false-arrest claims against Sollie and Wyman, and his illegal-search-and-seizure claim against Wyman, should be allowed to proceed.

## I. BACKGROUND

### A. False Arrest, Illegal Search and Seizure, and Denial of Speedy Trial and Due Process

Plaintiff says that he was unconstitutionally searched and seized while in his vehicle at Sammy Davidson Park in Meridian. [9] at 4. Plaintiff also claims that he was arrested "without probable cause." [48] at 2. After the incident, his truck was impounded by some third party, and he has yet to recover it. [9] at 5. During his incarceration at LCDF, he contacted the Sheriff's Department about the location of his vehicle but was simply told to "contact the city." (Tr. 15).

Plaintiff claims that he has been "trapped" at LCDF awaiting indictment since July 4, 2022. [1] at 1. By the time of the Omnibus Hearing, Plaintiff had been in custody for over nine months but still had not been indicted. (Tr. 12). Nor had he spoken to a defense attorney at that point. (Tr. 12). He also complains that his preliminary hearing was held by "video call" and that none of the witnesses against him were present. [12] at 1; (Tr. 13). And Plaintiff complains that he was not

---

[2] Plaintiff recently named Wyman as Defendant, [58] at 1, so he has not yet filed a dispositive motion. As discussed below, the undersigned will recommend that Wyman be served with process and then given an opportunity to file a dispositive motion on Plaintiff's remaining claims.

released on his own recognizance; instead, he was given a $10,000.00 bond. [12] at 1; (Tr. 13). Had Plaintiff's vehicle been returned to him, he argues that he could have used the title as collateral to "bond . . . out." [48] at 2.

For these claims, Plaintiff sues Lauderdale County and insists that the County has violated the Mississippi Rules of Criminal Procedure in handling his case. (Tr. 11-13). Plaintiff sues Sollie for "false arrest, malicious prosecution, mental and emotional outrage and intentional infliction of stress." [33] at 10. And Plaintiff sues Wyman for "false arrest," "malicious prosecution," "forcing an illegal search and seizure," and "negligence for leaving [Plaintiff's] vehicle instead of impounding it and allowing it to be 'stolen.'" [54] at 1.

## B. Denial of Adequate Medical Care

Plaintiff sues the Medical Defendants for the alleged denial of medical care. *See* (Tr. 27-28). During his time at LCDF, Plaintiff complains that he has been denied medical treatment for his diabetes. [1] at 1. Plaintiff avers that he uses cinnamon to treat his diabetes, instead of Metformin, "which has documented deadly side effects." [9] at 6. Plaintiff also rejected the offer of insulin to treat his condition. (Tr. 26). When Marlow offered Plaintiff an injection of insulin for his diabetes, he refused. [9] at 7. Plaintiff blames Marlow for "tr[ying] to create an addiction to [his] body [that] could have . . . killed [him]." [9] at 7. Plaintiff also accuses Marlow of "assault and battery," presumably for offering him the shot of insulin. [33] at 9.

Plaintiff claims that his family has offered to supply him with "the supplement [his] body demands," but the Medical Defendants have refused their offer. [1] at 1. Instead, the Medical Defendants offered Plaintiff "a snack pack and milk," along with "2 finger pricks a day." [9] at 6. After Plaintiff refused these finger pricks and other medical intervention, Plaintiff avers that "[t]he

staff retaliatory decided to stop checking [his] sugar." [12] at 2; *see also* (Tr. 27-28).

Plaintiff also complains that he was charged $10 for medication after attending a sick call "for a sprained back and panic attacks." (Tr. 31-33). When asked about his physical injuries, Plaintiff responded that his shoulder "hurts constantly," his "breathing is altered," and he suffers sleep disruptions because of "fear and anxiety." [12] at 4.

### C.  Unconstitutional Living Conditions

Plaintiff also avers that he has been "subjected to unspeakable filth and health risk[s]" at LCDF, including "eating meals with feces on the tables." [1] at 1. He also complains about the occasional 24-hour lockdown, black mold in the vents and elsewhere, and holes and leaks in the building. [9] at 5. Plaintiff testified that, when it rains, "the water leaks on the floor and you can see the innards of the roof leaking down." (Tr. 35).

When Plaintiff complained about the "feces incident," he says he was moved to lockdown "where there is no cold water" to drink. [9] at 7; (Tr. 43). Later, he was housed with an inmate who "planted a shank in [Plaintiff's] bed." [9] at 8. For that incident, Plaintiff was given another 30-day lockdown. [9] at 8. Because of Plaintiff's behavioral issues, he says that he has been tased and pepper sprayed. [9] at 8; [12] at 2.

Plaintiff says that Smith wrongfully strip searched and "sadistically attacked" him while he was in custody—including what Plaintiff characterizes as a sexual assault in a broom closet. [12] at 3-4; (Tr. 52-53). Plaintiff also maintains that Smith's use of "chemical agents against [him]" constitutes the "excessive use of force." [33] at 1, 9. Finally, Plaintiff claims that Sollie failed to properly train and supervise his officers. (Tr. 57); [12] at 2.

4

## III. DISCUSSION

### A.  Pending Interlocutory Appeal

As a threshold matter, the undersigned must examine whether the Court has jurisdiction to resolve the pending motions in light of Plaintiff's Notice [55] of Interlocutory Appeal filed on November 21, 2023. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception." (quotation omitted)). For two reasons, the undersigned concludes that this Court may exercise jurisdiction to resolve the pending Motions [48] [49]. First, the pending Motions [48] [49] are unrelated in substance to the matters apparently raised in the Notice [55] of Interlocutory Appeal. Second, Plaintiff's Notice [55] of Interlocutory Appeal is procedurally flawed.

To the first point, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). Thus, "[a] notice of appeal from an interlocutory order does not produce a complete divestiture of the district court's jurisdiction over the case; rather, it only divests the district court of jurisdiction over those aspects of the case on appeal." *Alice L. v. Dusek*, 492 F.3d 563, 564 (5th Cir. 2007); *see also Taylor v. Sterrett*, 640 F.2d 663, 667-68 (5th Cir. 1981) ("[W]here an appeal is allowed from an interlocutory order, the district court may still proceed with matters not involved in the appeal."). "How broadly a court defines the aspects of the case on appeal depends on the nature of the appeal." *Alice L.*, 492 F.3d at 565.

It is unclear which order Plaintiff means to appeal. *See* [55]. He twice mentions a "text only order," [55] at 1-2, and two text-only orders had been entered in the weeks before his Notice

[55] was filed. First, Defendants timely requested two additional weeks within which to file their summary-judgment motion. [46] [47]. The Court granted that request and deemed the motion timely filed. (Text-Only Order, Nov. 6, 2023). Second, the Court ordered Plaintiff to identify the John Doe Defendant, including his name and address, along with the nature of Plaintiff's claims against him. (Text-Only Order, Nov. 6, 2023). But Plaintiff's Notice [55] does not specifically identify which of these two orders he means to appeal—alleging only thus:

> The language of the Judges [*sic*] "text only order" is disconcerning [*sic*] considering that to this point the plaintiff has met all deadlines. Without answers to the plaintiffs [*sic*] objection to denial of counsel, preliminary injunctions, and denial of discovery request the docket clearly shows that the only dilatory delays are to be credited to the defense barring only canine euphemism or his pets cullinary [*sic*] ingestion of cartography!

[55] at 1. Plaintiff goes on to complain that the unspecified text-only order "is essentially [a] denial [of] acces[s] to the court," and that whatever order he means to appeal presents a "threat[] to democracy." [55] at 2.

But Plaintiff's Notice [55] does not mention his request for injunctive relief or its factual bases—that he was improperly denied bail and has been unable to recover his confiscated property. *See* [48] at 1. Nor does it mention the pending Motion [49] for Summary Judgment or its factual basis—that Plaintiff failed to exhaust his available administrative remedies before filing this lawsuit. *See* [49] [50] [51]. Thus, "it does not appear that the [pending] motion[s] concern[] an aspect of the appeal." *See Miller v. Harrison Cnty., Miss. by and Through Bd. of Supervisors*, No. 1:07-cv-00541-LG-JMR, 2009 WL 10706026, at *2 (S.D. Miss. Aug. 3, 2009) (resolving a motion despite an unrelated pending interlocutory appeal). For this reason, the undersigned is of the opinion that the Court may exercise jurisdiction to resolve them.

Second, Plaintiff's Notice [55] of Interlocutory Appeal is premature. The parties have not consented to have the magistrate judge preside over this case under 28 U.S.C. § 636(c), (Minute Entry, Apr. 25, 2023), so any order of the undersigned in this case may not be appealed directly to the Fifth Circuit, *see Gregg v. Linder*, 349 F.3d 860, 862 (5th Cir. 2003). Instead, the district judge presiding over this case must "review[] and consider[]" any order of the undersigned before it becomes "a final decision of the district court." *See id*. Plaintiff did not seek review of either text-only order entered by the undersigned on November 6, 2023. His Notice [55] is premature, providing another reason that the Court may exercise jurisdiction to resolve the pending Motions. [48] [49]. *See Evans v. Mississippi*, No. 2:11-cv-00002-MTP, 2012 WL 4480731, at *1 (S.D. Miss. Sept. 26, 2012) (exercising jurisdiction to decide a motion for summary judgment when the notices of appeal were filed by a *pro se* plaintiff "prematurely").

## B. Motion [48] for Preliminary Injunction and Temporary Restraining Order

### i. Standard of Review

"A preliminary injunction serves to 'preserve the status quo and thus prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits.'" *Miller v. Miss. Resources, LLC*, No. 5:17-cv-00041-DCB-MTP, 2017 WL 2772097, at *2 (S.D. Miss. June 26, 2017) (quoting *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017)). "Temporary restraining orders are simply highly accelerated and temporary forms of preliminary injunctive relief, which serve to preserve the status quo and prevent irreparable harm so long as is necessary to hold a hearing." *Id*. (quotation and alterations omitted). "The party moving for either form of relief under [Federal] Rule [of Civil Procedure] 65 must demonstrate: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that

irreparable injury will result if the injunction is not granted, (3) that the threatened injury outweighs the threatened harm to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Id.* (quotation omitted).

"Temporary restraining orders and preliminary injunctions are extraordinary and drastic remedies, not to be granted routinely but only when the movant, by a clear showing, carries a burden of persuasion on all elements." *Id.* (quotation and alterations omitted). "[T]he enormity of the relief is difficult to overstate." *Trinity USA Operating, LLC v. Barker*, 844 F. Supp. 2d 781, 785 (S.D. Miss. 2011). "In essence, a movant for pre-trial, injunctive relief represents to the court that its case is so particularly unusual, the strength of its case so particularly great, and the risk of incurable injury so particularly unbearable that the promise of a typical day in court ultimately will serve no practical purpose." *Id.* "If the movant fails to carry its burden on any one of the four elements set forth above, the Court must deny the request for injunctive relief." *Miller*, 2017 WL 2772097, at *2.

### ii.    Analysis

Plaintiff's unopposed Motion [48] for Preliminary Injunction and Temporary Restraining Order is not the model of clarity. He appears to request (1) immediate release from custody and (2) the return of his confiscated property: "Release on personal recognicanse [*sic*] according to Rule 8.2 of the MRCP and Location of Vehicle by EMDTF." [48] at 1. Being denied bail, Plaintiff complains that he has "suffered . . . sexual assault, physical battery, [and] loss of property" during his time at LCDF. [48] at 1. He also insists that his "false imprisonment" is based on "false statements adding to [his] charges." [48] at 1. Finally, Plaintiff argues that he could have used the title to his vehicle to "bond . . . out" had it been properly returned to him. [48] at 2.

The undersigned concludes that Plaintiff's two requests for preliminary injunctive relief each fail on the first required element—showing a substantial likelihood of success on the merits. *See Miller*, 2017 WL 2772097, at *2. Insofar as Plaintiff asks to be released on his own recognizance, Plaintiff may not obtain that type of relief in this civil-rights proceeding under § 1983. *See Cook v. Tex. Dep't of Criminal Justice Transitional Planning Dep't*, 37 F.3d 166, 168 (5th Cir. 1994). Rather, Plaintiff may pursue his request for immediate release through a properly filed state criminal motion, state writ application, or federal habeas corpus proceeding. *See id.* ("[T]he writ of habeas corpus is the appropriate federal remedy for a state prisoner challenging the fact of confinement."). To that end, Plaintiff has two pending lawsuits under 28 U.S.C. § 2241 within which he may raise his request for immediate relief, *Coleman v. Sollie*, No. 3:23-cv-03125-HTW-LGI (S.D. Miss.); *Coleman v. Sollie*, No. 3:23-cv-00214-HTW-LGI (S.D. Miss.)—one of which the Court severed from this very civil-rights proceeding, [57] at 2-3. Plaintiff cannot obtain the relief he seeks here, and the undersigned recommends that his Motion [48] be denied with respect to his first request.

Insofar as Plaintiff seeks the return of his confiscated property, he fails to state a constitutional claim upon which relief may be granted under § 1983. Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981). "It affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Id.* (quoting § 1983).

The alleged deprivation of Plaintiff's property sounds in the law of procedural due process.

9

"It is well-established that neither negligent nor intentional deprivation of property violate due process where there is an adequate state tort remedy available." *Jordan v. Johnston*, No. 2:09-cv-00244-KS-MTP, 2011 WL 3924825, at *7 (S.D. Miss. Aug. 18, 2011), *report and recommendation adopted by* 2011 WL 3924836, at *1 (S.D. Miss. Sept. 6, 2011). "Numerous Fifth Circuit cases have upheld dismissal of prisoners' suits for property deprivation because of the availability of state law remedies." *Id.*; *see*, *e.g.*, *Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994) ("Murphy's claim based on the confiscation of his property is not actionable under [S]ection 1983."); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984) ("[I]f Marshall's property was taken without compensation, he has a remedy in state court. Therefore, he has not been deprived of property without due process."). Indeed, "Mississippi provides post-deprivation remedies for both negligent and intentional conversions of property." *Jordan*, 2011 WL 3924825, at *7 (citing MISS. CODE ANN. § 11-38-1, *et seq.* (claim and delivery); MISS. CODE ANN. § 11-37-101, *et seq.* (replevin)). And "the Fifth Circuit has held that 'Mississippi's post-deprivation remedies for civil IFP litigants satisfy due process.'" *Id.* (quoting *Nickens v. Melton*, 38 F.3d 183, 185 (5th Cir. 1994)). Plaintiff cannot recover on this claim under § 1983 either; instead, he should pursue this claim in state court.

In sum, the undersigned concludes that neither of Plaintiff's requests for preliminary injunctive relief would succeed on the merits because neither request is cognizable under § 1983. Since Plaintiff fails to satisfy the first element of the pertinent analysis, "the Court must deny the request for injunctive relief." *See Miller*, 2017 WL 2772097, at *2. The undersigned thus recommends that Plaintiff's Motion [48] for Preliminary Injunction and Temporary Restraining Order be denied.

### C.  Motion [49] for Summary Judgment and Joinder [51] in Same

#### i.    *Standard of Review*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with 'significant probative' evidence." *Id.* (quoting *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978)).

ii.   *Analysis*

    a. **Exhaustion of administrative remedies is mandatory for claims arising after incarceration.**

"Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010). Exhaustion of administrative remedies through the prison grievance system is a prerequisite for lawsuits filed under § 1983. *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001); *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available have been exhausted."). The Fifth Circuit takes a "strict approach" to the exhaustion requirement. *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008) (quotation omitted).

"Exhaustion is mandatory for 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Alexander v. Tippah Cnty.*, 351 F.3d 626, 630 (5th Cir. 2003 (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Dismissal is mandatory where an inmate has failed to properly exhaust the applicable administrative grievance procedure before filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). "The exhaustion requirement hinges on the availability of administrative remedies." *Pettis v. Hall*, No. 1:19-cv-00127-RPM, 2021 WL 785096, at *1 (S.D Miss. Mar. 1, 2021) (brackets and quotation

omitted). "An inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id*.

A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 83-84. "The grievance process must be carried through to its conclusion *before* suit can be filed under the Prison Litigation Reform Act." *Id.* (emphasis added). A properly exhausted claim has "complete[d] the administrative review process in accordance with the applicable procedural rules." *Woodford*, 548 U.S. at 88. Those rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

### b. Plaintiff failed to exhaust LCDF's grievance procedure on the claims arising after his incarceration.

The County Defendants attached to their Motion [49] the Affidavit of Major Melissa McCarter, the Jail Administrator at LCDF. [49-2] at 1. Major McCarter testified about the grievance procedure available at LCDF as follows. *See* [49-2] at 1-5. Since May 1, 2022, about two months before Plaintiff was arrested, LCDF has required inmates to submit grievances electronically via the kiosk system, "rather than [through] paper grievance forms." [49-2] at 2. Each time an inmate uses the kiosk system, he is required to acknowledge "several individual broadcast messages," including one that explains the grievance procedure. [49-2] at 3. Before filing this lawsuit, Plaintiff "acknowledged the grievance/inmate request broadcast message 58 times, meaning that he logged into the kiosk at least 58 times and had the opportunity to read the message." [49-2] at 4.

Major McCarter testified that "the only way to submit a grievance, and to appeal a

grievance, [is] by following the simple step-by-step process on the [kiosk system]." [49-2] at 3.

The kiosk system allows inmates to view "a listing of open grievances and closed grievances,"

including the "staff response" to each grievance. [49-2] at 2-3. The kiosk system also allows

inmates to "decide whether to appeal the [staff] response by following a step-by-step process:"

> If the grievance does not yet have a response, then it will open but simply show the contents of the grievance. If, however, there is a response, a small window will open which shows the grievance with the response immediately beneath it, and with a red square which reads "appeal" and a blue square which reads "OK"; the detainee can appeal by simply clicking the red square and can then provide an explanation for why/how he disagrees with the initial response. If he clicks OK, then the grievance is closed.

[49-2] at 3. Plaintiff attached excerpts of the Inmate Handbook to his summary-judgment

Response, showing that LCDF's grievance procedure includes a second step—or "appeal." [52-2]

at 4. Plaintiff testified at the Omnibus Hearing that he knew he was required to appeal responses

to his grievances. (Tr. 47).[3] And Plaintiff in fact began appealing responses to his grievances on

December 8, 2022, [49-2] at 4, about two months after he filed this lawsuit.

The County Defendants also attached to their Motion [49] a record of Plaintiff's grievances

submitted from the time he entered LCDF until he filed this lawsuit. [49-3] at 9-21. Before filing

this lawsuit, Plaintiff filed 23 grievances on the kiosk system, but "he did not appeal the response

to any of those grievances." [49-2] at 4. Major McCarter simplified: "Mr. Coleman had the

opportunity and ability to appeal any and all of his 23 pre-suit grievances, but elected not to do

so." [49-2] at 5. And "the exhaustion process must be completed before the federal lawsuit is filed;

---

[3] "THE COURT: And then if you are not satisfied with that response, is there a second step that you're required to take under their policy? Do you have to appeal it? PLAINTIFF COLEMAN: You have to appeal, yes, sir." (Tr. 47). "[T]estimony at the Omnibus Hearing constitutes competent summary-judgment evidence." *Bryant v. Cooley*, No. 2:21-cv-00051-BWR, 2023 WL 4423598, at *5 (S.D. Miss. July 10, 2023).

even complete exhaustion following the filing of the lawsuit is not sufficient." *Cantoral v. Dretke*, No. 6:05-cv-96, 2005 WL 2297222, at *2 (E.D. Tex. Sept. 19, 2005). Thus, Plaintiff failed to fully exhaust the administrative remedies available to him with respect to the claims arising after he was incarcerated at LCDF.

Allowing Plaintiff to proceed with this claim would frustrate the purposes of the exhaustion requirement: "agency authority, . . . efficiency, and [the] produc[tion] [of] a useful record for subsequent judicial consideration." *See Smith v. Turner*, No. 1:15-cv-00337-JCG, 2017 WL 536849, at *2 (S.D. Miss. Feb. 9, 2017) (quotation omitted). "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Woodford*, 548 U.S. at 95. "The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Id*. Because Plaintiff failed to complete both required steps of LCDF's grievance procedure, the undersigned recommends that his claims against all Defendants arising after his incarceration be dismissed without prejudice. *See Gonzalez*, 702 F.3d at 788.

Plaintiff's grievances do not mention the false arrest or illegal search and seizure, but those incidents occurred before Plaintiff was arrested and incarcerated at LCDF. The PLRA's exhaustion requirement applies only to "inmate claims about prison life," or "claims relating to conditions within a prison or correctional facility." *See Willard v. Hearn*, No. 1:19-cv-00908-RPM, 2021 WL 4099019, at *2 (S.D. Miss. Sept. 8, 2021) (quotations and alterations omitted). Thus, Plaintiff was not required to exhaust his administrative remedies with respect to his false-arrest and illegal-search-and-seizure claims arising before he was incarcerated. *See id*. The undersigned thus recommends that Plaintiff's false-arrest claim against Sollie and Wyman and his illegal-search-

and-seizure claim against Wyman be allowed to proceed.

### c. Plaintiff's evidence does not refute that conclusion.

"The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Butler v. Bancorpsouth Bank*, No. 3:05-cv-00262-DPJ-JCS, 2007 WL 3237927, at *1 (S.D. Miss. Oct. 31, 2007). "The non-moving party must then go beyond the pleadings and designate specific fact showing that there is a genuine issue for trial." *Id.* (quotation omitted). "Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Id.* "A simple plea for a jury trial on the bare assertion that there are genuine issues of material fact is not a sufficient response to a motion for summary judgment." *Id.*

Plaintiff offers four primary arguments in Response [52] to Defendants' Motion [49] for Summary Judgment. *First*, he says that "there was no option to appeal on the kiosk" before he filed this lawsuit. (Tr. 48); *see also* [52] at 6. In support, Plaintiff submitted a declaration executed by another inmate, Jeffery Marcum, explaining that he "do[es] not *remember* [*sic*] seeing a way to appeal on the [kiosk] until around February 2023." [52-7] at 1 (emphasis added). But Marcum's memory is no match for the records attached to Major McCarter's Affidavit, showing that other inmates were able to appeal on the kiosk system on June 24, July 26, and August 30, [49-3] at 26-31—well before Plaintiff filed this lawsuit. Nor does Marcum's declaration create a genuine factual dispute in light of Plaintiff's own testimony at the Omnibus Hearing that he knew he "ha[d] to appeal" a grievance. (Tr. 47). To overcome a properly supported motion for summary judgment, "[t]here must . . . be adequate proof in the record showing a real controversy regarding material

16

facts." *Tolliver v. Breland*, 2:05-cv-02106-MTP, 2008 WL 509175, at *1 (S.D. Miss. Feb. 21, 2008). "In the absence of proof, the court does not assume the nonmoving party could or would prove the necessary facts." *See id*. (quotation omitted).

*Second*, Plaintiff argues that he was "denied discovery," and the Court should withhold its decision on Defendants' Motion [49] since "the facts are in possession of the moving party." [52] at 1. The exhibits attached to Plaintiff's Response [52] directly refute his assertion that he was unable to conduct discovery on the exhaustion issue. Actually, much evidence submitted by the parties overlaps—including grievance procedures, a record of Plaintiff's grievances, and grievance appeals submitted by other inmates. Plaintiff does not advise the Court what additional discovery he needed, and the undersigned declines to assume that additional discovery would have better supported Plaintiff's summary-judgment Response [52]. *See Tolliver*, 2008 WL 509175, at *1.

*Third*, Plaintiff argues that Major McCarter's Affidavit is a "sham." [52-3] at 3. "Under the sham affidavit doctrine, a district court may refuse to consider statements made in an affidavit that are so markedly inconsistent with a prior statement as to constitute an obvious sham." *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 472 (5th Cir. 2019) (quotations omitted). But "the sham affidavit doctrine doesn't apply here because [Plaintiff] ha[s] not directed the Court to any prior statement from [Major McCarter] that contradicts [her] declaration." *See Hollins v. Wilkinson Cnty. Sch. Dist.*, No. 5:17-cv-00108-KS-MTP, 2019 WL 3769637, at *4 (S.D. Miss. Aug. 9, 2019). Rather, Plaintiff apparently means to argue that Major McCarter's statement is false, but "[t]he Court is not permitted to make credibility determinations or weigh the evidence" when deciding a motion for summary judgment. *See Insurasource, Inc. v. Phoenix Ins. Co.*, 912 F. Supp. 2d 433, 437 (S.D. Miss. 2012).

*Fourth*, Plaintiff urges the Court to exercise "discretion to grant relief pending exhaustion." [52] at 3. Apparently conceding his failure to exhaust administrative remedies where required, Plaintiff contends that "PLRA provisions should not be read to overturn the ordinary practices of litigation." [52] at 2. The United States Supreme Court put this argument to rest many years ago: "Exhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford*, 548 U.S. at 85; *see also Gonzalez*, 702 F.3d at 787-88 (holding that "district courts have no discretion to waive the PRLA's pre-filing exhaustion requirement"). Because Plaintiff's claims arising after his incarceration were not fully exhausted, they should be dismissed without prejudice. *Gonzalez*, 702 F.3d at 788.

## IV. RECOMMENDATION

Having thoroughly reviewed and liberally construed the pleadings and testimony, along with the Motions [48] [49] and Response [52] presently pending, the undersigned recommends as follows:

1. Plaintiff's Motion [48] for Preliminary Injunction and Temporary Restraining Order should be denied.

2. Defendants' Motion [49] for Summary Judgment and Joinder [51] in same should be granted in part and denied in part.

   a. Plaintiff's speedy-trial, due-process, medical-care, and living-conditions claims against all Defendants should be dismissed without prejudice for failure to exhaust administrative remedies. Defendants Lauderdale County, Smith, Marlow, and SHP should be dismissed without prejudice as Defendants herein.

   b. Plaintiff's false-arrest claims against Sollie and Wyman, and his and illegal-

search-and-seizure claim against Wyman, should be allowed to proceed. The undersigned recommends the Court issue a Notice of Lawsuit and Request to Waive Service of Summons to Wyman in due course and subsequently establish case-management deadlines for the adjudication of Plaintiff's remaining claims.

## V. NOTICE OF RIGHT TO APPEAL/OBJECT

Within fourteen days of being served with a copy of this Report and Recommendation, any party may serve and file written objections with the Clerk of Court. An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. Within seven days of service of the objections, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objections. L.U.CIV. R. 72(a)(3).

The District Judge shall make a *de novo* determination of those portions of the Report and Recommendation to which objection is made. The District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1).

The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *See Wallace v. Miss.*, 43 F.4th 482, 494-95 (5th Cir. 2022) (collecting cases).

**SIGNED,** this 3rd day of January, 2024.

/s/ *Robert P. Myers, Jr.*

ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE