```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                    NORTHERN DIVISION
```

BRAZ COLEMAN                                            PLAINTIFF

VS.                           CIVIL ACTION NO. 3:22CV621TSL-RPM

LAUDERDALE COUNTY, ET AL.                              DEFENDANTS

ORDER

This cause is before the court on the January 23, 2024 report and recommendation of United States Magistrate Judge Robert P. Myers. Therein, he recommended that plaintiff's motion for a preliminary injunction be denied and that the motion of the County defendants,[1] joined by the Medical defendants,[2] for summary judgment on the issue of exhaustion be granted as to all claims arising after plaintiff's incarceration and denied as to those accruing before his incarceration, which plaintiff was not required to exhaust.[3] Plaintiff has filed objections to the report and recommendation and the court, having reviewed the report and recommendation and plaintiff's objections, concludes

---

1   Plaintiff has named Lauderdale County, Sargent Smith and Sheriff Billie Sollie as defendants.

2   Plaintiff named Ticia Marlow, a medical employee, and Southern Health Partners as defendants.

3   The report and recommendation also correctly concludes that the court was not divested of jurisdiction when plaintiff filed a notice of appeal from a nonfinal order.

1

that the objections concerning the proposed denial of his motion for preliminary injunction should be overruled and thus, as to that issue and as to the recommendation of denial of summary judgment on plaintiff's pre-incarceration claims, the magistrate judge's report and recommendation will be adopted.  The court further concludes, however, that plaintiff's objections to the recommendation that his post-incarceration claims be dismissed for failure to exhaust are well taken and will be sustained to the extent set forth herein.  Therefore, the report and recommendation is modified in part, in that defendants' motion for summary judgment as to plaintiff's post-incarceration claims will be denied and the case will be remanded to the magistrate judge for an evidentiary hearing on the issue of administrative exhaustion of plaintiff's post-incarceration claims for denial of adequate medical care and unconstitutional living conditions, identified on pages 3-4 of the report and recommendation or for further proceedings, in the event that exhaustion is waived.[4]  See Dillon v. Rogers, 596 F.3d 260, 273 (5th Cir. 2010) ("If the plaintiff

---

4   As set forth in the report and recommendation, plaintiff is not required to exhaust any claims which accrued pre-incarceration.  Further, while Coleman mentions in his objection putative claims which either arose or were only aggrieved after he filed suit on October 24, 2024, the report and recommendation correctly identifies the claims before the court in this case.

2

survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary."); <u>Fields v. Cain</u>, No. Civ.A. 11-0244-BAJ, 2012 WL 1946510, at *3 (M.D. La. Apr. 12, 2012), <u>report and recommendation adopted</u>, No. CIV.A. 11-244-BAJ, 2012 WL 1947417 (M.D. La. May 30, 2012) (concluding that genuine issues of material fact precluded summary judgment on issue of exhaustion and referring case to magistrate judge for evidentiary hearing).

Pursuant to 28 U.S.C. § 1997e(a), prior to filing suit, a prisoner must exhaust all "available" remedies prior to filing his lawsuit. <u>See</u> <u>also</u> <u>Porter v. Nussle</u>, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002) (holding that exhaustion is mandatory for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). As the Supreme Court has made clear, while "[a]n inmate ... must exhaust available remedies, [he] need not exhaust unavailable ones." <u>Ross v. Blake</u>, 578 U.S. 632, 642, 136 S. Ct. 1850, 195 L. Ed. 2d 117 (2016). "Whenever defendants claim a failure to exhaust, they have the burden to prove that the plaintiff did not exhaust administrative remedies that were actually available to him." <u>Davis v. Fernandez</u>, 798 F.3d 290, 294–95 (5th Cir. 2015).

3

"[A]n inmate is required to exhaust ... only those [ ] grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Ross, 578 U.S. at 642, 136 S. Ct. 1850 (quoting Booth v. Churner, 532 U.S. 731, 738, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001)).

> The Supreme Court has identified three circumstances under which "an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. at 643, 136 S. Ct. 1850. These circumstances exist "where (1) prison officials are 'unable or consistently unwilling to provide any relief to aggrieved inmates,' (2) the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use' by an ordinary prisoner, or (3) prison administrators 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Hinton v. Martin, 742 F. App'x 14, 15 (5th Cir. 2018) (citing Ross, 578 U.S. at 643–44, 136 S. Ct. 1850).

Huskey v. Jones, 45 F.4th 827, 831 (5th Cir. 2022) (reversing grant of summary judgment where prisoner was given only partial information explaining prison process); Dillon v. Rogers, 596 F.3d at 268 (recognizing "the importance of ensuring that inmates have avenues for discovering the procedural rules governing their grievances"); Brantner v. Freestone Cnty. Sheriffs Off., 776 F. App'x 829, 834 (5th Cir. 2019) (holding that summary judgment was precluded where prisoner may have been "'thwart[ed]' from using prison processes because he was supplied with documents that only partially explained the prison processes.").

4

In the court's view, the second circumstance set out in Ross is implicated in this case. It is true that "courts may not deem grievance procedures unavailable merely because an inmate was ignorant of them, so long as the inmate had a fair, reasonable opportunity to apprise himself of the procedures." Davis v. Fernandez, 798 F.3d 290, 295 (5th Cir. 2015) (concluding that where "undisputed evidence shows that the jail's grievance procedures are published in an inmate handbook, which is in the record, and explained on jail television," plaintiff's ignorance of the grievance procedures, without more, was no basis to deem them unavailable). Here, however, there are genuine issues of material fact as to whether Coleman had the required "fair, reasonable opportunity" to inform himself of the procedures he was required to follow. As set out in affidavit of Major Melissa McCarter, Assistant Jail Administrator, in May 2022, approximately two months before Coleman was arrested and incarcerated at the Lauderdale County Detention Facility (LCDF), the facility instituted a new method for inmates to submit their administrative grievances. Instead of using paper grievance forms, under the new method, all grievances were required to be submitted electronically at touch-screen kiosks located in the zone/pod, using a "menu-driven step-by-step electronic form." To be allowed

5

to submit a grievance or to appeal, a detainee using the kiosk system was required to acknowledge "several different broadcast messages," including one purporting to explain the grievance procedure.[5] According to McCarter's affidavit:

> Each detainee's account also includes a listing of open grievances and closed grievances. By "tapping on" an open grievance, the detainee can open and review the staff response, and also decide whether to appeal the response by following a step-by-step process. If the grievance does not yet have a response, then it will open but simply show the contents of the grievance. If, however, there is a response, a small window will open which shows the grievance with the response immediately beneath it, and with a red square which reads "appeal" and a blue square which reads "OK"; the detainee can appeal by simply clicking the red square and can then provide explanation for why/how he disagrees with the initial response. If he clicks OK, then the grievance is closed.

McCarter's affidavit also recites that the Inmate Handbook setting forth the grievance procedure was available to inmates via the

---

5   Per Exhibit F to McCarter's affidavit, the following is the broadcast message for the "Grievances and Request Platform":
>   From: Jail Staff
>   You are going to see two platforms for your grievances and requests. If you need to inform the jail staff of a facility issue or staffing issue then please submit that under the grievance platform. If you are requesting that something be provided to you then please submit that under the request platform. If you accidentally submit the form to the incorrect location, they can be moved by staff, but please try and submit them in the appropriate location.

An inmate could not submit a grievance unless he selected the "I AGREE" tab.

6

kiosk. Notably, however, until late November, 2022, a month after Coleman filed suit, the version of the handbook allegedly available in the kiosk[6] did not reflect information about the new, electronic grievance procedure but rather reflected the procedure related to filing grievances (and appeals) using the outdated paper system.[7]

In support of their motion, defendants point out that prior to filing suit on October 24, 2022, Coleman used the kiosk to file twenty-three grievances, and although the system allowed for an appeal, he failed to avail himself of this option. They also direct the court's attention to Coleman's omnibus hearing testimony wherein he stated that he knew he needed to appeal. From this, they argue because the record establishes that Coleman

---

6   On December 7, 2022, Coleman filed a grievance/request stating, "[T]he staff keeps telling me the handbook is on the kiosk . . . can you elaborate on what link to follow?" A staff member responded: "I CAN GET YOU A COPY OF THE INMATE HANDBOOK." According to McCarter's affidavit, Coleman perfected his first appeal the next day, December 8.

7   In support of his response in opposition to the motion, plaintiff provided two pages that appear to be from an inmate handbook, which detail the grievance appeal procedure. As this exhibit outlines a paper-based grievance procedure, the court assumes that they are from the outdated handbook. The defendants did not provide the court with a handbook, old or new.

7

failed to follow LCDF's two-step process to completion, he failed to properly exhaust before filing suit and dismissal is required.

Coleman did testify that he knew he needed to appeal to the second step. However, he was not asked and did not state when or how he became aware that he needed to appeal, nor was he questioned about his efforts, if any, to discover the appeal procedure.[8] He also testified that "[t]hey didn't -- they didn't start putting the appeals in the kiosk until late November, like, after I had already contacted you all," and that

> I appealed every time there was an option to appeal, but what I'm saying is that during the first 3 to 4 months of my incarceration, there was no option to appeal on the kiosk. It didn't pop up until after they printed out a new handbook, which they revised in November. The option to appeal did not even -- it wasn't available, and the information on how the grievance system works wasn't available.

(Emphasis added). While defendants have submitted proof that the appeal option was available on the computerized system, as other inmates were able to perfect appeals, it is not apparent from the record evidence that the appeal option would have been self-explanatory to a user of the kiosk, nor have defendants presented evidence to show all inmates were either provided instruction or

---

8   As set out in footnote 6, Coleman perfected his first appeal the day after he requested information on where to locate the link to the handbook on the kiosk. It may be that until that date, Coleman did not know that he needed appeal.

8

provided access to information on how to perfect an electronic appeal, i.e., that an inmate needed to "tap on" his open grievances to review the staff response then proceed to appeal or accept the response to the grievance. Defendants have admitted, in fact, that the revised handbook detailing the new procedure was only loaded into the kiosk in late November. Deramus v. Claiborne Par. Det. Ctr., No. CV 21-2566, 2022 WL 17840412, at *5 (W.D. La. Nov. 21, 2022), report and recommendation adopted, No. CV 21-2566, 2022 WL 17839009 (W.D. La. Dec. 21, 2022) (denying summary judgment where record demonstrated genuine dispute concerning whether prisoner had a reasonable opportunity to apprise himself of the rules for proceeding to the next steps).

Even were the court able to conclude that Coleman had a fair opportunity to apprise himself of the grievance/appeal procedure, he has raised an additional, unaddressed issue related to exhaustion. Specifically, plaintiff asserted in response to the motion and again by way of his objections that defendants failed to respond to several of his grievances, two of which outline complaints related to the care of his diabetes.[9] These exhibits appear to indicate that the grievances were "in progress," and not

---

9  Specifically, by his objection, plaintiff points to his September 6 and 10, 2022 grievances.

9

"resolved." Coleman maintains that he never received a response to the grievances. He argues that in light of this failure to respond, his diabetes-related claim should be deemed exhausted, notwithstanding his failure to proceed to the second step. See Wilson v. Epps, 776 F.3d 296, 301 (5th Cir. 2015) (explaining that "under some circumstances, a prison's failure to respond to a prisoner's grievance can result in the prisoner's administrative remedies being deemed exhausted"). Defendants' motion for summary judgment did not address these allegedly pending grievances, nor did defendants file a rebuttal in support of their motion or a response in opposition to Coleman's objection.

To determine whether a claim may be deemed exhausted, the court must look to the requirements of the prison's grievance procedures. Id. Here, because LCDF's grievance policy is not part of the record, it follows that this issue may not be resolved by summary judgment. See Deramus, 2022 WL 17840412, at *5 (finding genuine dispute and denying summary judgment as to whether the ARP allows a prisoner to proceed to Steps Two and Three when a prisoner does not receive a response to his Step One grievance). As genuine issues of material fact preclude summary judgment on the issue of exhaustion as to the post-incarceration

10

claims and as plaintiff is not required to exhaust his pre-incarceration claims, defendants' motion is denied.

Based on the foregoing, it is ordered that plaintiff's objections related to the recommended denial of plaintiff's motion for preliminary injunction are overruled, while his objections related defendants' motion for summary judgment are sustained as set forth herein. The report and recommendation of United States Magistrate Robert P. Myers entered on January 3, 2023, be, and the same is hereby, adopted as the finding of this court, subject to the foregoing modification. It follows that plaintiff's motion for preliminary injunction is denied and that defendants' motion for summary judgment is denied. It is further ordered that the matter is remanded to the magistrate judge for further proceedings consistent with this order.[10] Lastly, it is ordered that plaintiff's motion for additional time to file objections is denied as moot.

SO ORDERED this 28th day of March, 2024.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

10   Defendants, of course, may choose to waive the issue of exhaustion and proceed to litigation of the merits of plaintiff's claims. The magistrate judge, in his discretion, may set a deadline for the defendants to indicate their election.

11