### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**BRAZ COLEMAN**                                                                   **PLAINTIFF**

**VERSUS**                              **CIVIL ACTION NO. 3:22-cv-00621-TSL-RPM**

**LAUDERDALE COUNTY, et al.**                                    **DEFENDANTS**

### **REPORT AND RECOMMENDATION**

Proceeding *pro se* and *in forma pauperis*, Plaintiff Braz Coleman is an inmate currently housed at the Lauderdale County Detention Facility ("LCDF") in Meridian, Mississippi. Coleman filed this civil action on October 24, 2022, alleging several claims under 42 U.S.C. § 1983, including false arrest, illegal search and seizure, denial of his right to a speedy trial, denial of due process, denial of adequate medical care, and unconstitutional conditions of confinement at LCDF. He names four county Defendants (Lauderdale County, Billie Sollie, Sergeant Smith, and Sergeant Allen Wyman) and two medical Defendants (Ticia Marlow and Southern Health Partners).

Now before the Court is Coleman's Motion [64] for Preliminary Injunction, filed on February 5, 2024. Pursuant to the Court's Order, [75] at 1, the county Defendants and the medical Defendants filed written responses [80] [81] on June 6, 2024. The Court heard arguments for and against the Motion [64] at a motion hearing on June 27, 2024. The parties entered evidence [87] [88] at the hearing, and Coleman testified on his own behalf. After due consideration, the undersigned recommends that the Motion [64] for Preliminary Injunction be denied.

# I. BACKGROUND

**A. Relevant Allegations[1]**

In his Complaint, Coleman alleged that he has been denied medical treatment for his Type II Diabetes during his time at LCDF. [1] at 1. Coleman averred that he uses cinnamon to treat his diabetes, instead of Metformin, "which has documented deadly side effects." [9] at 6. At the Omnibus Hearing on April 25, 2023, Coleman testified that he also rejected the offer of insulin to treat his condition. [32] at 26. When Defendant Marlow offered Coleman an injection of insulin for his diabetes, he refused. [9] at 7. He later accused her of "assault and battery," presumably for offering him the shot of insulin. [33] at 9.

At that time, Coleman's family had offered to supply him with "the supplement [his] body demands," but the medical Defendants refused their offer. [1] at 1. Instead, the medical Defendants offered Coleman "a snack pack and milk," along with "2 finger pricks a day." [9] at 6. After Coleman refused these finger pricks and other medical intervention, Coleman claimed that "[t]he staff retaliatory decided to stop checking [his] sugar." [12] at 2; *see also* [32] at 27-28. Coleman now alleges that his diabetes went unmonitored for over a year. [64] at 1.

In his Motion [64] for Preliminary Injunction, Coleman reports that he was "called to the medical cart" on or about November 13, 2023, for a checkup with a "new" nurse practitioner. *Id*. When she tested his blood sugar, it was "well over the status for stroke, heart disease, and several other life threatening side effects." *Id*. Coleman's provider "suggested a new medicine in pill form besides [his] prescribed Metformin"[2] and "insisted on puncturing [Coleman's] fingers [seven

---

[1] Coleman's Motion [64] for Preliminary Injunction concerns only the alleged denial or delay of medical care, so the undersigned has omitted any discussion of Coleman's unrelated claims.

[2] Coleman takes inconsistent positions on Metformin. In his Amended Complaint, filed on January 11, 2023,

2

times] a week to monitor the new medicine." *Id*. Coleman "counteroffered" to allow finger pricks three or four times per week, but his provider "got upset and told [Coleman] he wasn't prescribing something he couldn't monitor." *Id*. at 1-2. Coleman testified at the motion hearing that he rejected daily Accu-Check assessments, which break the skin, to avoid "the chance of being infected with COVID and other things."

After this interaction, Coleman submitted a sick call to advise providers about "vision blurriness and numbness in [his] left arm," which he feared were "the beginning of stroke symptoms." *Id*. He suggested alternative treatments "that didn't require punctures" and offered to take his "old prescription." *Id.* He claims that staff "informed [him] that [his] family needs to bring cinnamon if that's what [he] need[s]." *Id*. Thus, Coleman's sister allegedly "brought both cinnamon and [his] previous prescription for Metformin" to LCDF on December 26, 2023. *Id.* at 3. The next day, Defendant Marlow refused to "plac[e] [Coleman's] medicine in [his] property" and "motioned for guards to tase or attack [him]" when asked about it. *Id*. Coleman now asks the Court to "direct staff to release [his] property . . . seeing that denial will cause irreparable injury beyond that already done by [the] denial of medical care." *Id*.

**B. Defendants' Evidence**

The medical Defendants entered Coleman's medical records in evidence at the motion hearing as Exhibit D-1 [88]. Coleman's medical records confirm that his blood sugar was very high (513) at the time of his checkup in November 2023. *Id*. at 74. Before this visit, Coleman had multiple documented incidents of refusing to accept his medication or submit to Accu-Check

---

Coleman reported that Metformin is an unsuitable treatment option because it "has documented deadly side effects." [9] at 6. He now claims that prior physicians prescribed him Metformin, and he now apparently considers it an appropriate course of treatment. [64] at 1-3.

3

assessments, citing primarily his lack of trust in the medical staff. *See*, *e.g.*, *id*. at 26-52. More than one time, Coleman flatly advised medical staff that "he is not going to take insulin." *Id*. at 46, 52. And his Medication Administration Record confirms Coleman's persistent refusal to accept the medication offered to him. *See*, *e.g.*, *id*. at 54-62.

On January 24, 2024, Coleman finally agreed to submit to Accu-Check assessments as ordered and to take 500 milligrams of Metformin twice per day. *Id*. at 74. Since Coleman began taking Metformin as prescribed, his blood-sugar levels have stabilized and remain in a healthy range. *See id*. at 111-115. In March 2024, after his blood sugar steadily decreased over the course of two months, Coleman's Accu-Check assessments were reduced to once per week. *Id*. at 71. Coleman confirmed these details at the motion hearing.

In any event, the medical Defendants argue that Coleman's Motion [64] for Preliminary Injunction is "frivolous" because "his family did not even bring [him] cinnamon." [82] at 6. Attached as Exhibit A to their Response [82], the medical Defendants included black-and-white photographs of "Braz Coleman's meds." [81-1] at 2-3. These pictures depict "an unmarked bottle of white pills," along with "two bottles of cranberry pills." [82] at 6. Coleman testified at the motion hearing that his sister did in fact bring cranberry pills to LCDF instead of the cinnamon pills he requested.

### III. DISCUSSION

"A preliminary injunction serves to 'preserve the status quo and thus prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits.'" *Miller v. Miss. Res., LLC*, No. 5:17-cv-00041-DCB-MTP, 2017 WL 2772097, at *2 (S.D. Miss. June 26, 2017) (quoting *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017)).

4

The party seeking this relief "must demonstrate: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that irreparable injury will result if the injunction is not granted, (3) that the threatened injury outweighs the threatened harm to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Id*. (quotation omitted).

"[P]reliminary injunctions are extraordinary and drastic remedies, not to be granted routinely but only when the movant, by a clear showing, carries a burden of persuasion on all elements." *Id*. (quotation and alterations omitted). "[T]he enormity of the relief is difficult to overstate." *Trinity USA Operating, LLC v. Barker*, 844 F. Supp. 2d 781, 785 (S.D. Miss. 2011). "In essence, a movant for pre-trial, injunctive relief represents to the court that its case is so particularly unusual, the strength of its case so particularly great, and the risk of incurable injury so particularly unbearable that the promise of a typical day in court ultimately will serve no practical purpose." *Id*. "If the movant fails to carry its burden on any one of the four elements set forth above, the Court must deny the request for injunctive relief." *Miller*, 2017 WL 2772097, at *2.

Coleman originally asked the Court to compel the medical Defendants to give him the medication that his sister brought to LCDF on December 26, 2023, [64] at 1-3, which includes "an unmarked bottle of white pills," along with "two bottles of cranberry pills," [82] at 6. The undersigned concludes that Coleman's request for injunctive relief fails on two of the four required elements.

First, Coleman cannot show a substantial likelihood of success on the merits of his Eighth Amendment medical-care claim. "A pretrial detainee's constitutional right to medical care . . . flows from the . . . due process guarantees of the Fourteenth Amendment." *Wagner v. Bay City,*

5

*Tex.*, 227 F.3d 316, 324 (5th Cir. 2000). "Liability for failure to provide such care attaches if [Coleman] can show that a state official acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted." *Id*. "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Coleman must prove that the medical Defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*. (quotation omitted). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016).

Record evidence shows that the medical Defendants tried time and time again to treat Coleman's diabetes before he finally accepted a twice-daily dose of Metformin beginning in January 2024. [88] at 74. Coleman sued the medical Defendants simply because he disagreed with their recommended course of treatment, but Coleman "is not entitled to his *choice* of treatments." *See Fox v. GEO Grp.*, No. 4:12-cv-00026-LRA, 2013 WL 5655526, at *3 (S.D. Miss. Oct. 15, 2013) (emphasis in original); *see also Caviness v. Ladner*, No. 3:09-cv-00361-LRA, 2012 WL 1067957, at *7 (S.D. Miss. Mar. 29, 2012) ("[A] prisoner is not entitled to medical treatment of his choosing simply upon request."). Assuming that Coleman alleges a *delay* in medical care, rather than a straightforward *denial*, his claim also fails. "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). "There is no indication that a delay . . . in [Coleman's] blood sugar assessment and treatment caused him

substantial harm," so "he does not show a violation of his Eighth Amendment rights in connection with his medical care." *See McCoy v. Esquivel*, No. H-17-763, 2018 WL 3389702, at *6 (S.D. Tex. July 12, 2018); *see also Williams v. Browning*, No. Civ. A. V-03-157, 2006 WL 83433, at *3 (S.D. Tex. Jan. 11, 2006) (dismissing claim of diabetic inmate who failed to allege facts showing substantial harm caused by inability to obtain medications on time).

Second, Coleman cannot show a substantial threat that irreparable injury will result if the injunction is not granted. Again, Coleman and the medical Defendants have now settled on a mutually agreeable course of treatment for his diabetes, which has been well-controlled for several months now. [88] at 74, 111-115. He is not likely to suffer any injury at all from the denial of the medication that his sister delivered to LCDF in December 2023. Moreover, Coleman has failed to establish that the medication his sister delivered to LCDF in December 2023 is an effective treatment for diabetes in the first place. Neither party has identified the true nature of the "unmarked . . . white pills," nor has Coleman shown that "cranberry pills" would impact his diabetic condition anyway. *See* [82] at 6. Since Coleman fails to satisfy two elements of the pertinent analysis, "the Court must deny the request for injunctive relief." *See Miller*, 2017 WL 2772097, at *2.

As a parting note, it appears that Coleman's request for injunctive relief had broadened slightly by the motion hearing. Apparently recognizing that his original request for injunctive relief is no longer necessary, Coleman is now "requesting that any property, medically or otherwise, that [his] family brings to [him] from out of state . . . be directly brought to [him]." But the Prison Litigation Reform Act limits the availability of preliminary injunctive relief: "In any civil action with respect to prison conditions, . . . [p]reliminary injunctive relief must be narrowly drawn,

extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). By requesting that *any* property brought by his family to the facility at *any* time be immediately directed to him, Coleman has failed to identify a constitutional violation or any injury arising from it. Preliminary injunctive relief cannot be based on "mere speculation or conclusory allegations of irreparable harm." *Walker v. Hunt*, No. 1:19-cv-00246-LG-RHW, 2019 WL 6709556, at *2 (S.D. Miss. Oct. 31, 2019), *report and recommendation adopted by*, 2019 WL 6702432, at *1 (S.D. Miss. Dec. 9, 2019); *see also Roberts v. Lozada*, No. 5:21-cv-00170-BQ, 2022 WL 22391553, at *3 (N.D. Tex. Apr. 25, 2022) ("vague request[s] for injunctive relief [are] not cognizable"). The Court cannot narrowly tailor preliminary injunctive relief to satisfy Coleman's latest request.

## IV. RECOMMENDATION

Having thoroughly reviewed and liberally construed the pleadings and testimony, along with the Motion [64] and Responses [80] [81] pending, the undersigned recommends that Plaintiff Braz Coleman's Motion [64] for Preliminary Injunction be denied.

## V. NOTICE OF RIGHT TO APPEAL/OBJECT

Within fourteen days of being served with a copy of this Report and Recommendation, any party may serve and file written objections with the Clerk of Court. An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. Within seven days of service of the objections, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objections. L.U.CIV. R. 72(a)(3).

The District Judge shall make a de novo determination of those portions of the Report and Recommendation to which objection is made. The District Judge may accept, reject, or modify, in

whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge may also receive more evidence or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1).

The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge will be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *See Wallace v. Miss.*, 43 F.4th 482, 494-95 (5th Cir. 2022) (collecting cases).

**SIGNED,** this 30th day of July, 2024.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE