**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**BRAZ COLEMAN**                                                                      **PLAINTIFF**

**VERSUS**                                        **CIVIL ACTION NO. 3:22-cv-00621-TSL-RPM**

**LAUDERDALE COUNTY, et al.**                                              **DEFENDANTS**

## REPORT AND RECOMMENDATION

On October 24, 2022, *pro se* Plaintiff Braz Coleman filed this lawsuit under 42 U.S.C. §

1983. [1] at 1-2; [9] at 1. When he filed his Complaint, Plaintiff was a pretrial detainee being

housed at the Lauderdale County Detention Facility ("LCDF") in Meridian, Mississippi, [9] at 1,

but he has since been released from custody, [129] at 1. Plaintiff names as Defendants Lauderdale

County, Billie Sollie, Sergeant Smith, and Sergeant Allen Wyman ("the County Defendants"),

along with Ticia Marlow and Southern Health Partners ("the Medical Defendants"). Plaintiff's

claims were clarified at an Omnibus Hearing on April 25, 2023. [1]

Many motions are pending,[2] but this Report and Recommendation concerns only the

Motion [78] for Summary Judgment filed by the Medical Defendants on June 6, 2024. Plaintiff

responded [89] on July 1, 2024, and the Medical Defendants replied [90]. The matter being fully

briefed, and for the following reasons, the undersigned recommends that the Medical Defendants'

Motion [78] for Summary Judgment be granted and that Plaintiff's medical-care and assault-and-

---

[1] *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authorizing the magistrate judge to "hold an evidentiary hearing" to allow a *pro se* plaintiff to provide a "more definite statement"), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 (1989).

[2] Also pending are four motions filed by the County Defendants: (1) Motion [109] to Strike Plaintiff's Untimely Discovery Requests, (2) Motion [113] to Stay Proceedings, (3) Motion [117] for Partial Summary Judgment, and (4) Supplemental Motion [121] for Summary Judgment. Plaintiff has three pending motions too: (1) Motion [122] to Compel Discovery, (2) Motion [123] for Extension of Time to File Response to Motion [117] for Partial Summary Judgment, and (3) Motion [124] to Stay Summary Judgment Proceedings.

battery claims against all parties be dismissed with prejudice as frivolous.

## I. BACKGROUND

Because this Report and Recommendation concerns only Plaintiff's medical-care and assault-and-battery claims, the undersigned will not herein discuss his claims against the County Defendants. Those claims will be addressed by the Court in due course. The following discussion concerns only Plaintiff's allegations that he was denied adequate medical care during his term of incarceration at LCDF.

### A. Plaintiff's Allegations

When Plaintiff filed his Complaint on October 24, 2022, he reported being "trapped" at LCDF awaiting indictment since July 4, 2022. [1] at 1. On June 20, 2023, Plaintiff was finally indicted for trafficking methamphetamine with intent to distribute under Mississippi Code § 41-29-139. *State of Miss. v. Coleman*, No. 38CI1:23-cr-00203-rb (Lauderdale Cnty. Cir. Ct., June 20, 2023) (Doc. 1);[3] *see also* [78-1] at 1. He pled guilty to that offense on December 11, 2024, *Coleman*, No. 38CI1:23-cr-00203-rb (Doc. 18), and he was sentenced to serve 30 years in the custody of the Mississippi Department of Corrections, with 30 years suspended and five years of post-release supervision, *Coleman*, No. 38CI1:23-cr-00203-rb (Doc. 19). Plaintiff was given credit for time served, and he was released from custody after sentencing. *Id.*

During his time at LCDF, Plaintiff complains that he was denied appropriate medical treatment for his diabetes. [1] at 1. Plaintiff claims that he uses cinnamon capsules to treat his diabetes—instead of Metformin, "which has documented deadly side effects." [9] at 6. Plaintiff testified that he used Metformin several years prior, until he became "concerned about the side

---

[3] The Court "may take judicial notice of matters of public record." *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017).

effects." [32] at 19. Plaintiff also rejected an offer of insulin to treat his diabetes. *Id*. at 22, 26. One time, Plaintiff's "sugar jumped to [around] 300," and Marlow tried to inject him with a dose of insulin. *Id*. at 22. Plaintiff refused, having "already told [her that he doesn't] take insulin." *Id*. Plaintiff blames Marlow for "tr[ying] to create an addiction to [his] body [that] could have . . . killed [him]." [9] at 7. Plaintiff also accuses Marlow of "assault and battery," presumably for offering him the shot of insulin. [33] at 9.

Plaintiff claims that his family offered to supply him with "the supplement [his] body demands," but the Medical Defendants refused their offer. [1] at 1. Instead, the Medical Defendants offered Plaintiff "a snack pack and milk," along with "2 finger pricks a day." [9] at 6. After Plaintiff refused these finger pricks and other medical intervention, Plaintiff asserts that "[t]he staff retaliatorily decided to stop checking [his] sugar." [12] at 2; *see also* [32] at 27-28. He also claims that the staff discontinued his "snacks [and] milk" at that time. [32] at 25. Finally, Plaintiff claims that, after Marlow was "fired," the new nurse "stopped [his] medicine because [he] refused to see her." [9] at 8.

Plaintiff also complains that he was charged $10.00 for medication after attending a sick call "for a sprained back and panic attacks." [32] at 31-33. He testified that he "should have seen a doctor or nurse before they prescribed the medication," and that his custodians "should charge everyone" uniformly for sick calls. *Id*. at 33. In other words, Plaintiff is aggrieved that he was charged for a sick call, when medical staff were "not charging everybody else." *Id*. at 33-34. Plaintiff clarified at the Omnibus Hearing that medical providers at LCDF "didn't condition prescribing [him] medication or giving [him] medication on the payment of a fee." *Id*. at 33.

Plaintiff sued Marlow for her direct involvement in his care, and he sued Lauderdale

County because Marlow "is a representative of Lauderdale County."[4] *Id.* at 28-29. He sued Southern Health Partners, alleging that it is "respondeat superior for the torts of negligence and improper training." [33] at 9. He also claims that Southern Health Partners "fail[ed] to provide [holistic] options for care," which "constitute[s] deliberate indifference to [his] . . . medical needs in violation of the Eighth Amendment." *Id.* When asked about his physical injuries, Plaintiff responded that his shoulder "hurts constantly," his "breathing is altered," and he suffers sleep disruptions because of "fear and anxiety attacks." [12] at 4. He also testified that diabetes affects the eyesight, so he has "concerns that somebody needs to examine [his] eyes." [32] at 29, 31. Plaintiff seeks $360,000.00 in compensatory damages, which he believes will "cover . . . future medical treatment for mental health [and] life rehabilitation." [9] at 4.

### B. The Medical Defendants' Summary Judgment Evidence

The Medical Defendants submitted as evidence "all [of] the medical records" maintained by Southern Health Partners for Plaintiff during his stay at LCDF—from his incarceration until the Motion [78] for Summary Judgment was filed on June 4, 2024. [78-2] at 1, 68.

When Plaintiff was booked at LCDF on July 4, 2022, he reported having diabetes, regularly using alcohol, and suffering from "problems or pain with [his] teeth." *Id.* at 2-3. That day, Plaintiff's blood-glucose level was measured at 252 after he ate dinner. *Id.* at 7, 10. Thus, a Nurse Practitioner prescribed twice-daily accuchecks (for measuring blood-glucose levels), plus the administration of insulin on a "sliding scale." *Id.* at 5. On July 13, 2022, Plaintiff filed an inmate request, asking to use "cinnamon as a supplement to control [his] blood sugar" instead. *Id.* at 67. He was advised that the kitchen "provides a 2200 calorie . . . diabetic diet with a snack bag at

---

[4] Lauderdale County joins the Medical Defendants' request for summary judgment on Plaintiff's medical-care claims. [118] at 2.

night." *Id*.

Almost immediately, Plaintiff began refusing to take medication and have his blood-glucose levels monitored. *Id*. at 7. Plaintiff's medical providers made several attempts "to discuss [his] care," but most of these efforts were refused. *Id*. When Plaintiff finally spoke with a Nurse Practitioner on September 9, 2022, he reported that his blood-glucose levels were well-controlled by his independent efforts and that he would continue to refuse any medical intervention for treatment of his diabetes. *Id*. at 8. Plaintiff was instructed by the Nurse Practitioner to "put in [a] sick call . . . to discuss this . . . any time in the future." *Id*. The record contains many documented incidents of Plaintiff refusing medical care. *E.g.*, *id*. at 25-51. Medical intervention for the management of Plaintiff's diabetes was ultimately discontinued because of his persistent refusals to accept care. *Id*. at 8.

On November 14, 2023, Plaintiff's blood-glucose level was measured at 513, his blood pressure was higher than average, and he reported urinary difficulties. *Id*. at 73 (recording Plaintiff's "difficulty starting urine stream when voiding"). After consulting medical personnel, on January 24, 2024, Plaintiff agreed to have his blood-glucose levels monitored by accucheck and to take 500 milligrams of Metformin twice daily. *Id*. At this time, Plaintiff was also informed that his family could "bring cinnamon capsules per [his] request." *Id.* Yet the record lacks evidence that Plaintiff's family ever brought the cinnamon capsules he requested; apparently, "a family member who was visiting town for Christmas" mistakenly "brought the wrong supplement (cranberry)." [89-6] at 6.

Plaintiff took Metformin largely as prescribed during the next several months. [78-2] at 99-106; *but see* [78-2] at 118-125 (documenting the occasional refusal to take his medication during

this timeframe). Once Plaintiff began regularly taking Metformin, his blood-glucose levels showed marked improvement, dropping from a high of 312 in January 2024 to a low of 84 in May 2024. *Id*. at 110-114. Accordingly, on March 1, 2024, a nurse reviewed Plaintiff's treatment plan and ordered that his blood-glucose levels be monitored by accucheck weekly—a reduction in the frequency of accuchecks previously required. *Id*. at 72.

### III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). "In reviewing the evidence, the court must therefore refrain from making credibility determinations or weighing the evidence." *Id*. at 397-98 (quotation omitted).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant

discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with significant probative evidence." *Id*. (quotation omitted).

## IV. DISCUSSION

Plaintiff was a pretrial detainee when the alleged denial of medical care occurred. [9] at 1. Thus, his "constitutional rights flow from the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment prohibition against cruel and unusual punishment." *Brown v. Jackson Cnty.*, No. 1:08-cv-01312-HSO-JMR, 2010 WL 967897, at *4 (S.D. Miss. Mar. 15, 2010). "Because they have not yet been convicted of the crime with which they are charged, pretrial detainees have a due process right not to be punished for that crime." *Id*. But "[t]here is no significant distinction between pretrial detainees and convicted inmates when the denial of medical care is at issue." *Id*. "[A] pretrial detainee's due process rights are said to be at least as great as the Eighth Amendment protections available to a convicted prisoner." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (quotation omitted).

"A government official violates a pretrial detainee's Fourteenth Amendment right to medical care when the official acts with deliberate indifference to the detainee's serious medical needs." *Deroche v. Hancock Cnty.*, No. 1:18-cv-00215-LG-RPM, 2021 WL 2556598, at *5 (S.D. Miss. June 22, 2021). "To meet the extremely high standard for proving deliberate indifference, the plaintiff must show that the officers were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, that the officers actually drew the inference,

and that the officers disregarded that risk by failing to take reasonable measures to abate it." *See id.* (quotation omitted).

"Deliberate indifference cannot be inferred from negligent, or even grossly negligent, acts or omissions of a defendant; mere negligence, neglect, unsuccessful medical treatment or even medical malpractice do not give rise to a § 1983 cause of action." *Toomer v. Coulter*, No. 1:18-cv-00312-RHW, 2020 WL 1286215, at *3 (S.D. Miss. Mar. 18, 2020). "A prisoner claiming deliberate indifference to serious medical needs must submit evidence that Defendant 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (quoting *Davidson v. Tex. Dep't of Crim. Justice*, 91 F. App'x 963, 965 (5th Cir. 2004)). "The determinative issue is not whether the medical treatment plaintiff received was subpar in some respect, whether his medical problems persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether his serious medical needs were met with deliberate indifference." *Id.* (quotation, alterations, and emphasis omitted).

"Deliberate indifference is especially hard to show when the inmate was provided with ongoing medical treatment." *Fails v. DeShields*, 349 F. App'x 973, 976 (5th Cir. 2009). That is, "the existence of continuous medical care often precludes a finding of deliberate indifference." *Collins v. Caskey*, No. 4:07-cv-00058-HTW-LRA, 2009 WL 2368578, at *3 (S.D. Miss. July 29, 2009). "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). As relevant here, an inmate's refusal to accept the medical care being offered to him does not demonstrate a constitutional violation on the part of the providers. *E.g.*, *Hall v. Thomas*,

8

190 F.3d 693, 698 (5th Cir. 1999) (affirming summary judgment for the defendants where the plaintiff "refused to take his seizure medicine on 28 occasions"); *Allen v. Gunn*, No. 1:08-cv-00393-RHW, 2009 WL 3561541, at \*1 (S.D. Miss. Oct. 30, 2009) (granting summary judgment for the defendants where the plaintiff "refused the [prescribed] treatment").

From the evidence presented, the undersigned concludes that the Medical Defendants did not act with deliberate indifference to Plaintiff's serious medical needs. It is undisputed that Plaintiff's custodians were aware of his diabetes from the time he entered LCDF on July 4, 2022. Mot. [78-2] at 2. It is also undisputed that Plaintiff's blood-glucose level was measured that day, *id*. at 7, and that a Nurse Practitioner contemporaneously prescribed twice-daily monitoring of his blood-glucose level and the administration of insulin as needed on a "sliding scale," *id*. at 5.

Plaintiff immediately began refusing the prescribed course of treatment. *Id*. at 7-8. The Nurse Practitioner counseled Plaintiff on September 9, 2022, about the "need to monitor [and] take med[icine]" for his diabetes, but "he [was] very resistant to discussing" the matter and "refuse[d] to take any medication to help control" his condition. *Id*. at 8. Plaintiff was instructed at that time to "put in [a] sick call . . . to discuss this . . . any time in the future." *Id*. Instead, this record contains many documented incidents of Plaintiff refusing to take his medication. *Id*. at 25-51. He occasionally signed the form titled "Refusal of Medical Treatment and Release of Responsibility," *id*. at 28-38, citing "inconsistent policy" and "distrust of medical staff" as reasons for his refusal, *e.g.*, *id*. at 30. Alternatively, Plaintiff advised medical staff that he did "not need" blood-glucose monitoring, *id*. at 41, or that wearing "belly chains" to pill call "remind[ed] [him] of slavery," *id*. at 48. After a few months, Plaintiff's treatment was discontinued "secondary to [his] refusal to have accu[checks] or take any medication." *Id*. at 5.

9

When Plaintiff's next annual physical revealed a blood-glucose level of 513, he reconsidered the medical care previously offered to him. *Id*. at 73. On January 24, 2024, Plaintiff agreed to have his blood-glucose levels monitored by accucheck and to take 500 milligrams of Metformin twice daily. *Id*. After a few months of accepting these measures, Plaintiff's blood-glucose levels were well-controlled, *id*. at 110-114, and the frequency of his blood-glucose monitoring was decreased, *id*. at 72. Plaintiff's medical records thus show an undisputed pattern of "continuous medical care" at LCDF, and his medical-care claims should be dismissed with prejudice as frivolous. *See Collins*, 2009 WL 2368578, at *3.

Moreover, "Plaintiff does not have a constitutional right to free medical care." *Ashley v. Yanell*, No. 21-639-P, 2023 WL 6118543, at *3 (W.D. La. Aug. 29, 2023), *report and recommendation adopted by* 2023 WL 6096878, at *1 (W.D. La. Sept. 18, 2023). Plaintiff complains that he was charged $10.00 for medication following a sick call, [32] at 31-33, but he "does not allege that he was denied medical treatment because he could not pay the fee," *see Ashley*, 2023 WL 6118543, at *3. Thus, his complaint about medical fees should be also dismissed with prejudice as frivolous. *See id*.; *see also Holmes v. Caddo Par. Sheriff's Off.*, No. 24-1384, 2024 WL 5286381, at *3 (W.D. La. Dec. 6, 2024), *report and recommendation adopted by* 2025 WL 37031, at *1 (W.D. La. Jan. 6, 2025).

In response to the Medical Defendants' Motion [78] for Summary Judgment, Plaintiff questions the veracity of the medical records, [89] at 1-4; complains that medical staff did not persistently request his compliance with the prescribed treatment, [89] at 1-2; [89-6] at 1; and confirms his refusal to accept the prescribed treatment for various reasons, [89-6] at 2. Even if all facts in Plaintiff's Response [89] are true, the alleged constitutional violation amounts to a *delay*

in medical care—rather than a wholesale denial of medical care. Plaintiff does not dispute that blood-glucose monitoring, coupled with medication, is a constitutionally acceptable way to treat diabetes. *See Harris v. Donaldson*, No. 95-10265, 1995 WL 725438, at *2 (5th Cir. Nov. 3, 1995) (finding no deliberate indifference where the plaintiff's "blood sugar level was monitored on a daily basis and his insulin dose was adjusted accordingly"). He does not dispute that he finally accepted blood-glucose monitoring and twice daily doses of Metformin in January 2024, nor does he dispute that his diabetic condition improved in the aftermath. *See* [89-6] at 6 (reporting that, in January 2024, the Nurse Practitioner "negotiated once daily [accu]checks for a short period" and took "[Plaintiff's] advice of returning to Metformin").

A "delay in medical care can only constitute [a constitutional] violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 2001). Plaintiff has failed to establish that he suffered any substantial harm as a result of the care he received for his diabetes at LCDF. *E.g.*, *Olivas v. Corr. Corp. of Am.*, 215 F. App'x 332, 333 (5th Cir. 2007) (affirming summary judgment where the plaintiff failed to "show substantial harm related to the delay"); *Jones v. Ford*, No. 2:08-cv-00176-MTP, 2009 WL 2032398, at *6 (S.D. Miss. July 9, 2009) (granting summary judgment for the defendants where the plaintiff "neither alleged nor established that [any] delay caused him substantial harm").

When asked about his physical injuries, Plaintiff responded that his shoulder "hurts constantly," his "breathing is altered," and he suffers sleep disruptions because of "fear and anxiety attacks." [12] at 4. But Plaintiff does not allege that these conditions were caused by any delay in treatment for his diabetes. The cause of his shoulder pain is unclear, and his breathing issues and anxiety attacks were allegedly caused by various conditions of confinement at LCDF—namely,

11

"feces" strewn about the living quarters. [32] at 31. Plaintiff speculates that his eyesight might have deteriorated during his time at LCDF because he knows that diabetes might affect the eyes. *Id*. at 29, 31. But Plaintiff conceded at the Omnibus Hearing that no one had "refused" to examine his eyes; he merely has "concerns that somebody needs to examine [his] eyes." *Id*. at 31. Because Plaintiff has failed to allege and prove that he suffered substantial harm following a delay in medical care, any disputes of fact identified in his Response [89] are not material.

In the end, Plaintiff has adduced no evidence to show that the Medical Defendants violated his Fourteenth Amendment right to adequate medical care. If the moving party meets its summary-judgment burden, as the Medical Defendants have done here, the "nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The Court does not "assume that the nonmoving party could or would prove the necessary facts" at trial. *Id*. (emphasis omitted). "Case law in the Fifth Circuit confirms that a prisoner is not entitled to his *choice* of treatments," *Billups v. Owens*, 3:11-cv-00054-LRA, 2012 WL 2133664, at *3 (S.D. Miss. June 12, 2012) (emphasis in original), and the only competent summary-judgment evidence shows that Plaintiff's complaints were not refused, ignored, or intentionally handled incorrectly, *see Caviness v. Ladner*, No. 3:09-cv-00361-LRA, 2012 WL 1067957, at *7 (S.D. Miss. Mar. 29, 2012). The undersigned thus recommends that Plaintiff's medical-care claims against all Defendants be dismissed with prejudice as frivolous. *See, e.g.*, *Grumbles v. Livingston*, 706 F. App'x 818, 819 (5th Cir. 2017) (affirming grant of summary judgment for defendants where "[t]here [was] no competent summary judgment evidence" showing deliberate indifference); *see also Webster v. Davuluri*, No. 24-50640, 2025 WL 789554, at *1 (5th Cir. Mar. 12, 2025) ("A complaint is frivolous if it lacks an arguable

basis in law or fact." (quotation omitted)).

Finally, Plaintiff accuses Marlow of "assault and battery" under state law for attempting to provide him with an insulin injection. [33] at 9. Under Mississippi law, "[a]n assault occurs where a person (1) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (2) the other is thereby put in such imminent apprehension." *Morgan v. Greenwald*, 786 So. 2d 1037, 1043 (Miss. 2001). "A battery goes one step beyond an assault in that a harmful contact actually occurs." *Id.*

Plaintiff's assault-and-battery claim fails for two reasons. First, this record contains no competent summary-judgment evidence that Marlow "intentionally tried to harm [Plaintiff]." *See id.* at 1044. The medical records lack any indication that this incident between Plaintiff and Marlow actually occurred. For the first few days after he entered LCDF, the medical records do not reflect that Marlow treated Plaintiff for any reason, nor do they ever reflect that she tried to administer an insulin injection. A signature bearing some similarity to "Marlow" appears on a few of Plaintiff's "Refusal[s] of Medical Treatment and Release[s] of Responsibility," *e.g., id.* at 25-28, but none of these forms suggests that a provider attempted to inject Plaintiff with a dose of insulin after his verbal refusal. This satisfies the Medical Defendants' initial burden to highlight the "absence of genuine issues of material fact." *See Topalian*, 954 F.2d at 1311.

In response to their offer of proof, Plaintiff has failed to "direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial." *Id.* That is, Plaintiff has offered no more than "conclusory allegations" and "unsubstantiated assertions" that Marlow intended to harm him by offering an insulin injection, and such cannot

13

survive summary judgment.[5] *See Little*, 37 F.3d at 1075. Even were it clear by the medical records

that Marlow had attempted to administer insulin, Plaintiff has presented no evidence that her doing

so "was not a necessary part of [his] treatment," and the Mississippi Supreme Court is clear that

providers "should not be punished for simply carrying out their duties in handling patients in an

effort to treat them." *See Morgan*, 786 So. 2d at 1044.

Second, Plaintiff admits that no "harmful contact actually occur[red]," *see id.* at 1043,

which dooms his battery claim from the start. *See* [9] at 7 (alleging that Marlow had the "syringe

of insulin . . . mid air . . . until another inmate informed [him]"). The undersigned thus recommends

that Plaintiff's assault-and-battery claim be dismissed with prejudice too. *See Stevens v. City of*

*Jackson, Miss.*, No. 3:07-cv-00714-WHB-LRA; 3:09-cv-00424-WHB-LRA, 2011 WL 13353679,

at *7 (S.D. Miss. Mar. 2, 2011) (granting summary judgment for the defendants on state-law

assault claim where the plaintiff "failed to show that there exist[ed] a genuine issue of material

fact with regard to whether he was assaulted or battered").

## IV. RECOMMENDATION

The Motion [78] for Summary Judgment filed by Defendants Ticia Marlow and Southern

---

[5] Plaintiff's testimony at the Omnibus Hearing is the only competent summary-judgment evidence on Marlow's alleged assault and battery. *See Evans v. Miss.*, No. 2:11-cv-002, 2012 WL 4480731, at *4 n.3 (S.D. Miss. Sept. 26, 2017) ("[T]he Court considers [Plaintiff's] sworn testimony at the *Spears* hearing to be competent summary judgment evidence."). His description of the event is as follows:

> I think my sugar jumped to, like, 300. And that day, [Marlow] was like, well, just turn around. So I turned around, and she got the syringe in midair. It was another inmate who had to tell me, like, hey, man, you don't take insulin, do you? And I turned around, and she got the syringe in mid air. And so I'm like, what's going on? I already told y'all I don't take insulin. And that was one of our first tiffs, you know, and I didn't agree with the treatment.

[32] at 22. At no point did Plaintiff testify that Marlow intended to harm him by offering an insulin injection; he merely described a nurse offering her patient the course of treatment she believes will be the most effective to treat his condition. When he refused that course of treatment, the insulin was not administered.

Health Partners should be granted, and Plaintiff Braz Coleman's medical-care and assault-and-battery claims should be dismissed with prejudice as frivolous.

### V. NOTICE OF RIGHT TO APPEAL/OBJECT

Within fourteen days of being served with a copy of this Report and Recommendation, any party may serve and file written objections with the Clerk of Court. An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. Within seven days of service of the objections, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objections. L.U.CIV. R. 72(a)(3).

The District Judge shall make a *de novo* determination of those portions of the Report and Recommendation to which objection is made. The District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1).

The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *See Wallace v. Miss.*, 43 F.4th 482, 494-95 (5th Cir. 2022) (collecting cases).

**SIGNED,** this 14th day of May, 2025.

/s/ *Robert P. Myers, Jr.*

ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE