## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**BRAZ COLEMAN**                                                    **PLAINTIFF**

**VERSUS**                                    **CIVIL ACTION NO. 3:22-cv-00621-TSL-RPM**

**LAUDERDALE COUNTY, et al.**                                        **DEFENDANTS**

### REPORT AND RECOMMENDATION

On October 24, 2022, *pro se* Plaintiff Braz Coleman filed this lawsuit under 42 U.S.C. § 1983. [1] at 1-2; [9] at 1. When he filed his Complaint, Plaintiff was a pretrial detainee being housed at the Lauderdale County Detention Facility ("LCDF") in Meridian, Mississippi, [9] at 1, but he has since been released from custody, [129] at 1. Plaintiff names as Defendants Lauderdale County, Billie Sollie, Sergeant Smith, and Sergeant Allen Wyman ("the County Defendants").[1] Plaintiff's claims were clarified at an Omnibus Hearing on April 25, 2023. [2]

Before the Court are three Motions filed by the County Defendants: (1) Motion [113] to Stay Proceedings filed on October 11, 2024;[3] (2) Motion [117] for Partial Summary Judgment filed on October 28, 2024; and (3) Supplemental Motion [121] for Partial Summary Judgment filed on November 4, 2024. After a period of discovery disputes, which have now been resolved, the County Defendants were afforded the chance to supplement their dispositive motions, and Plaintiff was afforded a comparable time within which to respond. [134] at 10. The County Defendants'

---

[1] Plaintiff also named Ticia Marlow and Southern Health Partners ("the Medical Defendants") as Defendants, but they were awarded summary judgment by Order [138] dated June 4, 2025.

[2] *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authorizing the magistrate judge to "hold an evidentiary hearing" to allow a *pro se* plaintiff to provide a "more definite statement"), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 (1989).

[3] The Motion [113] to Stay Proceedings requests relief on behalf of Sheriff Sollie and Sergeant Wyman alone. Given the simple disposition recommended below, and for ease of reference, the undersigned treats this Motion [113] with the rest of those filed by the County Defendants.

final supplement [136] [137] was filed on May 28, 2025, and Plaintiff has not responded.

For the following reasons, the undersigned recommends that the County Defendants' Motion [113] to Stay Proceedings be denied as moot and that their Motion [117] for Partial Summary Judgment and Supplemental Motion [121] for Partial Summary Judgment be granted. The undersigned is of the opinion that the County Defendants are entitled to summary judgment on all of Plaintiff's claims against them—except his claims that Sergeant Smith used excessive force against him by macing and/or tasing him on two separate occasions.

## I. BACKGROUND

### A.  Plaintiff's Allegations against the County Defendants

When Plaintiff filed his Complaint on October 24, 2022, he reported being "trapped" at LCDF awaiting indictment since July 4, 2022. [1] at 1. On June 20, 2023, Plaintiff was finally indicted for trafficking 40 dosage units or more of methamphetamine under Mississippi Code § 41-29-139(f)(2)(c). [113-2] at 1. On December 11, 2024, Plaintiff pled guilty to possessing 39 dosage units of methamphetamine with intent to distribute, [136-1] at 1-13, and he was sentenced to serve 30 years in the custody of the Mississippi Department of Corrections, with 30 years initially suspended and five years of post-release supervision, [136-2] at 1-5. Plaintiff was given credit for time served, and he was released from custody after sentencing. *Id*.

Against the County Defendants, Plaintiff claims (1) a violation of his right to due process, (2) a violation of his right to a speedy trial by Lauderdale County, (3) unconstitutional living conditions at LCDF, and (4) use of excessive force against Sergeant Smith. [16] at 1-2; [32] at 10-11, 45-50. Plaintiff seeks approximately $360,000.00 in monetary damages. [9] at 4.

*First*, Plaintiff says he "was unconstitutionally searched and seized while in [his] vehicle

at Sammy Davidson Park in Meridian." [9] at 4; *see also* [53-2] at 1-2. Plaintiff also claims he was arrested by Sergeant Wyman "without probable cause." [48] at 2. After the incident, Plaintiff alleges his truck was "stolen or impounded by some [third] party," and he has yet to recover it. [9] at 5. Plaintiff complains that he "owned [his] vehicle and could have used the title for bond." *Id*. Plaintiff blames Sergeant Wyman for false arrest, malicious prosecution, and negligently "allowing [his vehicle] to be stolen." [54] at 1 (quotations omitted).

*Second*, Plaintiff blames Lauderdale County for violating his right to a speedy trial. [32] at 11. By the Omnibus Hearing, Plaintiff had been in custody for more than nine months without being indicted. *Id*. at 12. He had not yet appeared in court, though he participated in a "telecom hearing" during which his charges were announced and a bond amount was established at $10,000.00. *Id*. at 13. Nor had Plaintiff spoken with his appointed defense attorney by the Omnibus Hearing, despite trying to contact her though various means. *Id*. at 13-14. Plaintiff says Lauderdale County flouted the Mississippi Rules of Criminal Procedure by holding him for too long with no initial appearance and "no options to bond [out] on [his] own [recognizance]." [9] at 4.

*Third*, Plaintiff asserts that he was "subjected to unspeakable filth and health risk[s]" at LCDF, including "eating meals with feces on [the] tables." [1] at 1. Plaintiff claims another inmate was "throwing feces around" at one point, which caused this contamination. [32] at 28. When Plaintiff complained about the "feces incident," he was moved to lockdown "where there [was] no cold water." [9] at 7. Plaintiff later clarified that the lockdown zone lacked a "cold water cooler" and that he had to drink "juice" for two weeks during that time. [32] at 43-44.

Plaintiff also complains about black mold in the vents and the showers, and holes and leaks in the building. [9] at 6-7; [32] at 37-38. As a result of these conditions, Plaintiff claims that his

"breathing . . . changed dramatically" during his incarceration at LCDF and that he suffered anxiety attacks. [9] at 5, 7. He insists the building "is not fit for human habitation," *id*. at 6, though his custodians provided the inmates with cleaning supplies "[o]nce or twice a week," [32] at 38. Plaintiff also complains that pretrial detainees are housed with convicted state inmates at LCDF, [12] at 2, though "they are supposed to keep pretrial detainees separate," [32] at 45.

*Fourth*, Plaintiff claims Sergeant Smith assaulted him multiple times during his incarceration at LCDF. [32] at 50-56. The timing of these assaults is unclear from Plaintiff's account, but it is clear that Plaintiff complains about three separate incidents—one incident of so-called sexual assault and two incidents of macing and/or tasing.[4]

To start, Plaintiff claims he was housed with an inmate who "planted a shank in [his] bed." [9] at 8. Plaintiff believes that Sergeant Smith "got that guy to plant the weapon on [him]." [32] at 52. Sergeant Smith then "took [Plaintiff] to a broom closet" and "tr[ied] to do a strip search," which Plaintiff characterized as "a sexual assault." *Id*. Though Sergeant Smith did not physically touch him, Plaintiff testified that "there were sexual advances made in the closet" and that Sergeant Smith "was fondling himself." *Id*. at 52-53. Later, Plaintiff had a dispute with medical providers about "the discontinuation of [his] medicine," after which Sergeant Smith "came to [his cell] door . . . and sprayed [him] with mace." *Id*. at 53-54. Finally, Plaintiff claims he "was making [a] peaceful protest about [his] housing," when Sergeant Smith "maced [him] two times and then tased [him] two times." *Id*. at 55-56. Plaintiff insists he was not disruptive or combative during this

---

[4] For example, Plaintiff told the Court at the Omnibus Hearing that the alleged sexual assault occurred in November 2022, [32] at 51-53, but he told Defendants' counsel that "the broom closet incident" occurred in August of that year, *id*. at 68-69. The County Defendants' evidence provides some clarity, *see infra* at 5-7, but they have chosen not to brief the last macing-and/or-tasing episode—leaving even their account of the timeline incomplete.

situation. *Id.* at 56.

### B. The County Defendants' Summary Judgment Evidence

The County Defendants submitted the affidavit of Major Melissa McCarter, who serves as Jail Administrator at LCDF. [117-2] at 1-4. Major McCarter first testified that Sheriff Sollie delegated the management of LCDF to other officials during his tenure, so he "did not directly supervise any inmates, including Mr. Coleman." *Id.* at 1.

Major McCarter also testified that LCDF has certain policies and procedures relevant to the issues raised in this case, including those "that specify Housekeeping and Sanitation Practices." *Id.* at 2. Major McCarter averred that LCDF "has never had a problem with black mold, and certainly has never been condemned." *Id.* She also testified that "cleaning supplies are provided to clean the dayrooms for each housing unit" every day and that "cleaning supplies are also provided for detainees to clean their individual cells" every other day. *Id.* She added that "cleaning supplies will also be provided to clean cells as needed, or as requested." *Id.* A copy of the relevant housekeeping policy is attached to Major McCarter's affidavit as Exhibit A. [117-3] at 1-4.

Attached as Exhibit B is the policy entitled, "Minimum Conditions for [D]etainees/Facility Structure." [117-4] at 1-2. This policy requires LCDF to "provide a sanitary and healthy facility," which includes maintaining proper ventilation, a moderate temperature, and adequate lighting in housing units. *Id.* at 1. It also requires LCDF to provide one working toilet and one working shower for every four inmates. *Id.*

Another relevant policy in force at LCDF is entitled "Response to Resistance (Use of Force)," which "governed the use of 'chemical weapons' . . . during 2022 and 2023." [117-2] at 2. Major McCarter testified that detention officers at LCDF are provided with "extensive training"

on this topic, "including de-escalation." *Id*. A copy of this policy is attached to Major McCarter's affidavit as Exhibit C. [117-5] at 1-8. And the policy entitled "Searches of Inmates and Various Locations" is attached to Major McCarter's affidavit as Exhibit E. [117-7] at 1-14.

The County Defendants also submitted documentary evidence relevant to the alleged incidents of excessive force. On August 13, 2022, an inmate named Jawon Flowers filed the following grievance about Plaintiff's behavior: "my cell mate got a shank and he talking bout he gone stab one of the officers with it he crazy can yallmmove him the shank in his mate." [117-8] at 3 (errors in original). Officers moved Flowers to a new cell for his own safety and took Plaintiff "to the maintenance closet to strip search him." *Id*. at 4. Meanwhile, other officers searched Plaintiff's cell and "found a sharp metal object with plastic wrap[ped] around it," plus "an additional sharp piece of metal." *Id*. Once "[t]hese items were removed," Plaintiff "was placed back into" his cell. *Id*. He was found guilty of possessing a weapon and contraband at a disciplinary hearing four days later. *Id*. at 8-9.

Officer Christopher McNeil also testified by affidavit in support of the County Defendants. He averred that Plaintiff's strip search on August 13, 2022, "was uneventful." [121-1] at 1.[5] He and Sergeant Smith allowed Plaintiff to remove his own clothing, while they "visually looked for contraband including weapons." *Id*. Officer McNeil testified that neither he nor Sergeant Smith "touched . . . [Plaintiff] during the search." *Id*. They "made no comments of a sexual nature . . . during the search," and "Sergeant Smith did not inappropriately touch or fondle himself at any point . . . during the search or while [they] were in the closet with . . . [Plaintiff]." *Id*.

---

[5] The County Defendants' Supplemental Motion [121] for Partial Summary Judgment was filed solely because counsel "inadvertently omit[ted]" Officer McNeil's affidavit from the original submission. [121] at 2.

Finally, on November 30, 2022, someone named Officer Eakins reported that Plaintiff became disgruntled with "Nurse Mary" because "he no longer receive[d] medication." [117-6] at 2. When Plaintiff "dashed a cup of water towards Nurse Mary and Officer Shaffer," Officer Shaffer "took out his tazer [*sic*] and deployed it." *Id*. Sergeant Smith responded to the ruckus and "tried to remove the prongs" from Plaintiff's skin, when Plaintiff "began to resist." *Id*. Sergeant Smith "then deployed his [pepper] spray . . . and was able to pull out the prongs." *Id*. Sergeant Smith reported that he administered the pepper spray in "a 3 second burst" and subsequently "lock[ed] down the zone." *Id*. at 3. Officers then escorted Plaintiff to another zone and examined his body to "check for marks left from the prongs." *Id.* At that point, they learned "that the taser prongs didn't make contact with [Plaintiff's] . . . skin." *Id*.

The County Defendants submitted no summary-judgment evidence about the use-of-force incident that occurred on January 8, 2023.

### III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). "In reviewing the evidence, the court

must therefore refrain from making credibility determinations or weighing the evidence." *Id.* at 397-98 (quotation omitted).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with significant probative evidence." *Id.* (quotation omitted).

## IV. DISCUSSION

The County Defendants' Motion [113] to Stay Case should be denied as moot, and their Motion [117] for Partial Summary Judgment and Supplemental Motion [121] for Partial Summary Judgment should be granted. The undersigned is of the opinion that the County Defendants are entitled to summary judgment on all of Plaintiff's claims—except his claims that Sergeant Smith used excessive force against him by macing and/or tasing him on two separate occasions. Thus, the undersigned recommends that Lauderdale County, Sheriff Sollie, and Sergeant Wyman be dismissed as Defendants and that Plaintiff's sexual-assault claim against Sergeant Smith be dismissed with prejudice. The undersigned further recommends that both of Plaintiff's macing-and-tasing claims against Sergeant Smith proceed to trial.

### I.    The undersigned recommends the Motion [113] to Stay Case be denied as moot.

The County Defendants first moved the Court to stay these proceedings against Sheriff Sollie and Sergeant Wyman under *Heck v. Humphrey*, 512 U.S. 477 (1994). [113] at 1-2. "In *Heck*, the Supreme Court held that if a plaintiff's civil rights claim for damages challenges the validity of his criminal conviction or sentence, and the plaintiff cannot show that such conviction or sentence has been reversed, invalidated, or otherwise set aside, the claim is not cognizable under § 1983." *Magee v. Reed*, 912 F.3d 820, 822 (5th Cir. 2019) (citing *Heck*, 512 U.S. at 486-87). If a plaintiff's criminal prosecution is pending before the § 1983 claims are adjudicated, the Fifth Circuit counsels district courts to "stay proceedings in the section 1983 case until the pending criminal case has run its course, as until that time it may be difficult to determine the relation, if any, between the two." *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995); *see also Busick v. City of Madison, Miss.*, 90 F. App'x 713, 713-14 (5th Cir. 2004) ("[T]he district court should have stayed the proceedings in this civil action pending the resolution of the criminal charges.").

But Plaintiff pled guilty and was sentenced on the underlying criminal charge since the Motion [113] to Stay Proceedings was filed. [136-1] at 1-13; [136-2] at 1-5. Thus, his criminal prosecution is no longer pending, and all of his § 1983 claims are ripe for adjudication. The County Defendants have "confirm[ed] that their Motion [113] to Stay Proceedings is moot," [135] at 1, so the undersigned recommends that the Motion [113] to Stay Proceedings be denied as moot.

### II.    The undersigned recommends that Sheriff Sollie be awarded summary judgment on all claims based on Plaintiff's failure to demonstrate his personal involvement.

Plaintiff testified that he is only suing Sheriff Sollie "because he's the boss of the jail and the deputies . . . involved." [32] at 57. But "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). "Under section

1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). "However, a supervisor may be held liable if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* at 304. A supervisory official may also be liable if he "implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Id.* (quotations omitted).

"The sheriff's general responsibility for supervising the operations of his department is insufficient to establish personal involvement." *Ellis v. Packnett*, No. 5:06-cv-00033-DCB-JMR, 2007 WL 2688540, at *8 (S.D. Miss. Sept. 10, 2007). Undisputed evidence shows that Sheriff Sollie was not present during Plaintiff's arrest on July 4, 2022, [53-2] at 1, and Sheriff Sollie did not interact with Plaintiff once he was incarcerated at LCDF, [117-2] at 1. Thus, Plaintiff has described no wrongdoing of Sheriff Sollie's that might have caused the alleged constitutional violations, nor has Plaintiff identified any policy of Sheriff Sollie's that might have caused the alleged constitutional violations. In fact, the summary-judgment record contains several policies enacted by Sheriff Sollie that, if followed correctly, would have mitigated the constitutional violations alleged here. *See, e.g.*, [117-3] at 1-4; [117-4] at 1-2; [117-5] at 1-8; [117-7] at 1-14.

At best, Plaintiff claims that Sheriff Sollie is liable for failing to "properly [train] his officers." [12] at 2. To prove this claim, Plaintiff must "demonstrate (1) inadequate training procedures; (2) which caused the injury; and (3) deliberate indifference of municipal policymakers." *Dean v. Walker*, No. 5:08-cv-00157-DCB-JMR, 2009 WL 4855985, at *10 (S.D. Miss. Dec. 15, 2009) (quotation omitted). "To satisfy the deliberate indifference standard, the

10

plaintiff must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Id*. (quotations omitted). But Plaintiff has alleged no prior incidents involving these Defendants, providing the Court with "no facts or patterns of conduct that indicate that Sheriff [Sollie] acted with the deliberate indifference necessary for supervisor liability." *See id*. To the contrary, the record teems with undisputed evidence that "Sheriff Sollie . . . ensur[ed] [his] staff [was] properly trained" on topics implicated by Plaintiff's allegations. [117-2] at 2.

Thus, the undersigned is of the opinion that Plaintiff cannot maintain his § 1983 claims against Sheriff Sollie and that these claims should be dismissed with prejudice. *See McCloud v. Allison*, No. 1:08-cv-00581-RHW, 2009 WL 3214797, at *3 (S.D. Miss. Sept. 30, 2009) (awarding summary judgment to the sheriff when the plaintiff failed to allege "any personal involvement by [the sheriff] . . . , [or] any causal connection between any wrongdoing by [the sheriff] and the alleged constitutional deprivation"). Nor can Plaintiff maintain any state-law tort claims against Sheriff Sollie, which should be dismissed with prejudice too. *See McBroom v. Payne*, No. 1:06-cv-01222-LG-JMR, 2010 WL 3942412, at *6 (S.D. Miss. Oct. 6, 2010) (granting summary judgment for sheriff on state-law tort claims upon finding the sheriff had not "personally engaged" in conduct underlying the torts alleged).

**III.  The undersigned recommends the remaining County Defendants be awarded summary judgment on Plaintiff's due-process, speedy-trial, conditions-of-confinement, and sexual-assault claims.**

### i.  Due Process

Plaintiff characterizes as due-process claims all of those that implicate the alleged irregularities in his arrest: illegal search and seizure, false arrest, malicious prosecution, and

Sergeant Wyman negligently "allowing [his] vehicle to be stolen." [54] at 1 (quotation omitted). The first three of these claims are *Heck*-barred.

"Section 1983 claims based on an illegal stop, search, or seizure do not always implicate *Heck*." *Russell v. McGee*, No. 2:19-cv-00039-KS-MTP, 2020 WL 2310404, at *2 (S.D. Miss. Mar. 9, 2020), *report and recommendation adopted by* 2020 WL 2308086, at *1 (S.D. Miss. May 8, 2020). The *Heck* Court "explained that all claims based on violations of the Fourth Amendment do not necessarily imply the invalidity of an underlying conviction . . . because . . . doctrines such as independent source, inevitable discovery, and harmless error . . . could permit the introduction of illegally obtained evidence." *Id*. (citing *Heck*, 512 U.S. at 487 n.7). "[T]he independent source doctrine allows trial courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source." *Utah v. Strieff*, 579 U.S. 232, 238 (2016). "[T]he inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source." *Id*. And the admission of evidence is harmless if the evidence "was unnecessary to the conviction." *See Thompson v. Link*, No. 2:19-cv-00252, 2019 WL 6359238, at *2 (W.D. La. Nov. 27, 2019).

But nothing in the record suggests that these doctrines apply here. *See Hinton v. Joliff*, No. 5:16-cv-00015-DCB-MTP, 2016 WL 11477356, at *2 (S.D. Miss. Aug. 31, 2016), *report and recommendation adopted by* 2016 WL 7190577, at *2 (S.D. Miss. Dec. 12, 2016). Plaintiff's account shows that the discovery of the evidence against him depended on Sergeant Wyman's alleged misconduct. The discovery of the evidence was not inevitable; the evidence on Plaintiff's person or in his vehicle would not have been found without the alleged illegal stop, search, and seizure on July 4, 2022. *See id*. at *2 n.3. And the evidence found during the stop—drugs and drug

paraphernalia, [53-2] at 1—was necessary to his ultimate conviction, which has not "been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *See Heck*, 512 U.S. at 487. Thus, the undersigned is of the opinion that Plaintiff's illegal-search-and-seizure claim is *Heck*-barred. *See, e.g.*, *Shugart v. Six Unknown Fannin Cnty. Sheriffs*, 694 F. App'x 299, 299 (5th Cir. 2017) (holding that illegal-search-and-seizure claims were *Heck*-barred because the evidence obtained "would not otherwise have been admissible on an alternative basis, [so] a judgment on those claims in [the plaintiff's] favor would necessarily imply the invalidity of his drug conviction").

And "the rationale of *Heck* precludes [Plaintiff's] claim of false arrest." *See Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995). Plaintiff pled guilty in state court to possessing methamphetamine with intent to distribute, [136-1] at 1-13—a conviction stemming from his arrest on July 4, 2022, [113-2] at 1. Any finding that Plaintiff was falsely arrested would necessarily imply the invalidity of his conviction. *See, e.g.*, *Walter v. Horseshoe Ent.*, 483 F. App'x 884, 887 (5th Cir. 2012) ("*Heck* . . . bars recovery for the false arrest claim, because the conviction necessarily implies that there was probable cause for the arrest."); *Walker v. City of Gulfport*, No. 1:13-cv-00331-LG-JCG, 2014 WL 12649008, at *5 (S.D. Miss. Nov. 24, 2014) (finding false-arrest claim *Heck*-barred because the plaintiff would have "to negate . . . that he was lawfully arrested" to prevail); *Winters v. City of Gulfport*, No. 1:14-cv-00222-HSO-RHW, 2014 WL 6476264, at *3 (S.D. Miss. Nov. 19, 2014) (finding false-arrest claim *Heck*-barred when the plaintiff "pled guilty to the charges emanating from the traffic stop and arrest").

Likewise, "to permit a convicted criminal defendant to proceed with a malicious

prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit." *Heck*, 512 U.S. at 484 (quotation omitted). Plaintiff's malicious-prosecution claim cannot survive *Heck* either. *See, e.g.*, *Atwood v. Ford*, No. 2:14-cv-00202-KS-MTP, 2015 WL 3620528, at *4 (S.D. Miss. June 9, 2015). Thus, the undersigned recommends that Plaintiff's illegal-search-and-seizure, false-arrest, and malicious-prosecution claims be "dismissed with prejudice to their being asserted again until the *Heck* conditions are met." *See Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996).

Finally, Sergeant Wyman's alleged negligence in the treatment of Plaintiff's vehicle is not cognizable under Section 1983. *See Carrothers v. Kelly*, 312 F. App'x 600, 603 (5th Cir. 2009) ("[A]cts of negligence are not cognizable under § 1983."); *Patterson v. City of McComb, Miss.*, No. 5:18-cv-00074-DCB-MTP, 2018 WL 4956123, at *6 (S.D. Miss. Oct. 12, 2018) ("It is well settled that negligence, even gross negligence, does not implicate the Constitution and does not provide a basis for a Section 1983 claim.").

To the extent Plaintiff mounts his negligence claim against Sergeant Wyman under state law, the undersigned is of the opinion that it fails under the Mississippi Tort Claims Act ("MTCA"). "The MTCA is the exclusive civil remedy against a governmental entity or its employees for any state law tort claims." *Washington v. Univ. of Miss. Med. Ctr.*, No. 3:11-cv-00484-TSL-MTP; No. 3:11-cv-00485-HTW-LRA, 2013 WL 153171, at *4 (S.D. Miss. Jan. 15, 2013). "Although the MTCA waives sovereign immunity for tort actions, it also prescribes exemptions from this statutory waiver under which a governmental entity retains its sovereign immunity." *Miss. Dep't of Pub. Safety v. Durn*, 861 So. 2d 990, 994 (Miss. 2003).

"Under the Act, employees may be sued only as an official representative of the political

subdivision." *Mitchell v. City of Jackson, Miss.*, 481 F. Supp. 2d 586, 593 (S.D. Miss. 2006). That is, "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." MISS. CODE ANN. § 11-46-7(2). "[A]n employee shall not be considered as acting within the course and scope of his employment . . . if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense." *Id*. It is undisputed Sergeant Wyman was acting within his capacity as an officer of the Lauderdale County Sheriff's Department when these events occurred; specifically, he "was working a safety checkpoint" when he noticed Plaintiff behaving suspiciously and detained him. [53-2] at 1; *see also Mitchell*, 481 F. Supp. 2d at 593 (finding that officers "were acting in the course and scope of their duties as police officers" when "they were involved . . . in the arrest and detention of plaintiffs"). Nor does Plaintiff allege Sergeant Wyman's conduct was fraudulent, malicious, libelous, slanderous, defamatory, or criminal. Thus, any state-law negligence claim against Sergeant Wyman in his individual capacity should be dismissed with prejudice. *See, e.g.*, *Tilman v. Clarke Cnty.*, 514 F. Supp. 3d 884, 896 (S.D. Miss. 2021); *Patterson*, 2018 WL 4956123, at *7.

Any negligence claim against Lauderdale County or against Sergeant Wyman in his official capacity fares no better. The MTCA provides:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
> . . .
> (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

MISS. CODE ANN. § 11-46-9(1)(c). "Reckless disregard . . . denotes more than negligence, but less than an intentional act." *City of Jackson v. Lewis*, 153 So. 3d 689, 693 (Miss. 1989). "And even if

such recklessness is proven, immunity is still proper if the person injured was 'engaged in criminal activity at the time of the injury.'" *Poole v. City of Prentiss, Miss.*, No. 2:07-cv-00074-KS-MTP, 2008 WL 3874570, at *4 (S.D. Miss. Aug. 14, 2008) (quoting MISS. CODE ANN. § 11-46-9). "The MTCA is drafted to ensure that '[i]f the victim is engaged in illegal activity that is a cause of the harm, the government is immune from liability.'" *Id.* (quoting *Durn*, 861 So. 2d at 997); *see also Montgomery v. Warren Cnty.*, No. 5:11-cv-00004-DCB-JMR, 2013 WL 3776937, at *6 (S.D. Miss. July 17, 2013) ("There is no question that the MTCA was designed to provide immunity to officers from claims arising out of a valid arrest.").

The undersigned is of the opinion that the MTCA's police-function exemption bars Plaintiff's negligence claim about the loss of his vehicle for three reasons. First, "[t]he statute's plain language simply does not contemplate liability for actions that may relate merely to alleged reckless disregard of property." *Collins v. City of Newton*, 240 So. 3d 1211, 1223 (Miss. 2018). Plaintiff's negligence claim relates only to the loss of his vehicle; it does not concern "the safety and well-being of any *person*." *See* MISS. CODE ANN. § 11-46-9(1)(c) (emphasis added). Second, the evidence before the Court proves Plaintiff was "engaged in criminal activity" at the time of his encounter with Sergeant Wyman. *See id.*; *see also* [136-1] at 1-13 ("Petition to Enter Plea of Guilty"). Third, Plaintiff does not allege Sergeant Wyman acted recklessly during their encounter; he specifically accuses Sergeant Wyman of "*negligence* for leaving [his] vehicle instead of impounding it and allowing it to be stolen." [54] at 1 (emphasis added; quotation omitted).

"Because negligence is less than reckless disregard and because the actions alleged to have caused the [injury] . . . are related to police protection," Plaintiff's negligence claim should also be dismissed with prejudice against Lauderdale County and Sergeant Wyman in his official

capacity. *See Hundley v. City of Waynesboro*, No. 2:16-cv-00003-KS-MTP, 2016 WL 3267393, at *3 (S.D. Miss. June 14, 2016); *see also Jones v. City of Hattiesburg*, No. 2:18-cv-00084-KS-MTP, 2018 WL 3624978, at *3 (S.D. Miss. July 30, 2018) (dismissing claims for negligent infliction of emotional distress and negligence per se under the MTCA's police-function exemption).

### ii.    *Speedy Trial*

The undersigned is of the opinion that Plaintiff's speedy-trial claim is also *Heck*-barred. "The only remedy for a violation of the Sixth Amendment right to a speedy trial is dismissal of any criminal charges." *Quinn v. Roach*, 326 F. App'x 280, 290 (5th Cir. 2009); *see also Goodrum v. Quarterman*, 547 F.3d 249, 257 (5th Cir. 2008) ("A violation of the speedy trial right, if found, requires dismissal of the indictment."). Thus, "[a] determination that [Plaintiff's] Sixth Amendment right to a speedy trial was violated would necessarily implicate the invalidity of his conviction." *See Anderson v. Glaveston Cnty. Dist. Clerk*, No. 03-41010, 2004 WL 75452, at *1 (5th Cir. Jan. 14, 2004). Because Plaintiff's conviction and sentence have not "been overturned or otherwise declared invalid," *see id.*, "*Heck* bars his speedy-trial claim," *see Krause v. Leonard*, 352 F. App'x 933, 935 (5th Cir. 2009); *see also Jiles v. Pace*, No. 3:19-cv-00672-LRA, 2020 WL 7770904, at *3 (S.D. Miss. Dec. 30, 2020) ("A claim that the Sixth Amendment right to a speedy trial was violated is . . . an attack on the conviction and must be dismissed under the principles announced in *Heck*."). The undersigned recommends Plaintiff's speedy-trial claim be dismissed with prejudice to it "being asserted again until the *Heck* conditions are met." *Johnson*, 101 F.3d at 424.

### iii.    *Conditions of Confinement*

"The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a 'condition of confinement' or an 'episodic act or omission.'" *Seal v. Broadus*, No. 1:08-cv-01495-HSO-JMR, 2010 WL 537141, at \*4 (S.D. Miss. Feb. 11, 2010) (quoting *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997)). "A conditions of confinement claim is a constitutional attack on general conditions, practices, rules, or restrictions of pretrial confinement." *Coleman v. Hogan*, No. 2:16-cv-00131-KS-MTP, 2018 WL 1998343, at \*3 (S.D. Miss. Mar. 12, 2018) (quotation omitted), *report and recommendation adopted by* 2018 WL 1998524, at \*1 (S.D. Miss. Apr. 27, 2018). "In order to succeed on a claim alleging unconstitutional jail conditions, a pretrial detainee must establish that the complained-of conditions have been imposed for a punitive purpose and that they have resulted in 'serious deficiencies' in providing for his 'basic human needs.'" *Id*. (quoting *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 454 (5th Cir. 2009)).

The Constitution is not concerned with a "*de minimis* level of imposition" on pretrial detainees. *Ingraham v. Wright*, 430 U.S. 651, 674 (1977) (emphasis added). "The fact that a detention interfered with a prisoner's desire to live as comfortably as possible does not convert the conditions of confinement into punishment." *Lee v. Hennigan*, 98 F. App'x 286, 288 (5th Cir. 2004). Thus, a prisoner seeking to recover compensatory damages on a conditions-of-confinement claim must establish a physical injury that is more than *de minimis. Alexander v. Tippah Cnty.*, 351 F.3d 626, 631 (5th Cir. 2003); *see also* 42 U.S.C. § 1997e(e).

Plaintiff generally complains about five conditions of confinement at LCDF: (1) filthy living conditions, including one episode of feces on the dining table; (2) lack of a cold-water cooler

18

in the lockdown area; (3) black mold in his living quarters; (4) holes and leaks in the roof; and (5) pretrial detainees being housed with convicted inmates. [1] at 1; [9] at 6-7; [12] at 2; [32] at 37-38, 43-45. None of these claims amounts to a constitutional violation under the circumstances of this case, and all of them should be dismissed with prejudice.

**Filthy living conditions.** "Clearly, there is a point beyond which a jail's conditions are so unsanitary as to render them unconstitutional." *Ruffin v. Larpenter*, No. 19-10378, 2019 WL 2526739, at *3 (E.D. La. May 28, 2019), *report and recommendation adopted by* 2019 WL 2524582, at *1 (E.D. La. June 19, 2019). "In some circumstances, being placed in a cell with feces is sufficient to constitute a constitutional violation." *Neil v. Schlueter*, No. 09-4136, 2011 WL 2971930, at *6 (E.D. La. June 30, 2011), *report and recommendation adopted by* 2011 WL 2971880, at *1 (E.D. La. July 21, 2011). "However, the Supreme Court has noted that a filthy cell may be tolerable and not rise to the level of a constitutional violation where the detainee is held for a few days, but is intolerable, and thus unconstitutional, if the detainee is held for weeks or months." *Id*.

In *Neil*, the court found no constitutional violation where the plaintiff was "placed in [a] cell with feces" but transferred to different living accommodations the same day. *Id*. at *7. Likewise, Plaintiff concedes he "was moved to lockdown" when he complained about "[t]he feces incident." [9] at 7. On this basis, the undersigned thus concludes that Plaintiff "was not confined in [an area] with feces for a sufficient period to maintain a conditions of confinement claim." *See Neil*, 2011 WL 2971930, at *7; *see also, e.g.*, *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (finding no constitutional violation where the plaintiff was kept in a cell "with blood on the walls and excretion on the floors" for three days (quotation omitted)).

Plaintiff has failed to adequately describe any other conditions supporting his allegation of "unspeakable filth," [1] at 1, and has he not identified any physical injury arising from this condition. Plaintiff testified that inmates received cleaning supplies "[o]nce or twice a week," [32] at 38, and Major McCarter confirmed that cleaning supplies are distributed regularly, [117-2] at 2. The undersigned is of the opinion that Plaintiff's allegation about filthy living conditions does not state a constitutional claim.

**Lack of a cold-water cooler.** Plaintiff also complains that he was housed in a "lockdown zone" that lacked a "cold water cooler" for two weeks. [32] at 43-44. "Obviously, potable water is a basic human need and must be provided to inmates." *Maddox v. Gusman*, No. 14-2435, 2015 WL 1274081, at *4 (E.D. La. Mar. 19, 2015). "However, there is no requirement that they be provided with water coolers or chilled drinking water." *Id*. (collecting cases). During his two-week stay in the "lockdown zone," Plaintiff concedes he was provided juice to drink, and he had access to water in the shower. [32] at 43-45. The undersigned thus concludes that this allegation does not amount to a constitutional violation either.

**Black mold.** Next, Plaintiff complains the black mold in the living quarters at LCDF "dramatically" altered his breathing and caused him to suffer panic attacks. [9] at 5, 7. But "[t]here are no medical records" connecting Plaintiff's respiratory symptoms with the presence of black mold or showing that he suffered any lasting harm related to this condition. *See Eaton v. Magee*, No. 2:10-cv-00112-MTP, 2012 WL 2459398, at *5 (S.D. Miss. June 27, 2012). Moreover, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." *McAllister v. Strain*, No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009). "The mere fact that there is mold, mildew, or fungus does not warrant

20

relief." *Moore v. Stevens*, No. 2:17-cv-00146-KS-MTP, 2019 WL 2063524, at *3 (S.D. Miss. Apr. 12, 2019) (quotation omitted), *report and recommendation adopted by* 2019 WL 2062515, at *1 (S.D. Miss. May 9, 2019).

In any event, "Plaintiff has failed to show that such conditions amount[ed] to punishment and [were] not reasonably related to a legitimate governmental purpose." *See Barlow v. Forrest Cnty. Sheriff's Dep't*, No. 2:08-cv-00031-MTP, 2010 WL 480987, at *9 (S.D. Miss. Feb. 4, 2010) ("Plaintiff's claim that the shower and cell his is forced to share with other inmates are unsanitary and covered in mold and mildew . . . fails to rise to the level of a constitutional violation."). The undersigned is of the opinion that this claim fails too.

***Holes and leaks in the roof.*** Plaintiff testified that "holes in the roof" at LCDF caused "water [to leak] on the floor" every time it rained. [32] at 35. But Plaintiff has failed to show that he suffered any injury because of this condition—much less "harm [that is] . . . more than *de minimis.*" *See Deshazo v. Bowie Cnty.*, No. 5:22-cv-00114-RWS-JBB, 2024 WL 1627233, at *4-5 (E.D. Tex. Feb. 26, 2024) (recommending dismissal of claim "that the ceiling is falling down" and that "the roof leaks and has a hole in it" for failure to demonstrate the requisite physical injury), *report and recommendation adopted by* 2024 WL 1622624, at *1 (E.D. Tex. Apr. 15, 2024). "[P]uddles are unpleasant but not unconstitutional," *Smith v. Melvin*, No. 95-2531, 1996 WL 467658, at *2 (7th Cir. Aug. 14, 1996), so the undersigned recommends that this claim also be dismissed with prejudice.

***Pretrial detainees being housed with convicted inmates.*** Finally, Plaintiff complains that pretrial detainees are housed with convicted inmates at LCDF, [12] at 2, though "they are supposed to keep pretrial detainees separate," [32] at 45. "Although the housing of convicted inmates with

pretrial detainees is not ideal, . . . it is not *per se* unconstitutional to house a pretrial detainee with a convicted inmate." *Truehill v. Lafourche Par.*, No. 21-1842, 2022 WL 2921228, at *8 (E.D. La. June 22, 2022), *report and recommendation adopted by* 2022 WL 2918308, at *1 (E.D. La. July 25, 2022). "The housing of pretrial detainees with convicted inmates may raise constitutional concerns, but only if their classification together is handled indiscriminately without justification." *Id.* "Courts recognize that, in some circumstances, housing of pretrial detainees with convicted inmates is permitted." *Id.*

"Significantly, the classification of inmates is an administrative function of the prison." *McKay v. Terrebonne Par. Sheriff's Off.*, No. 06-5770, 2007 WL 163059, at *5 (E.D. La. Jan. 17, 2007). "Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation." *Id.*

"To state a claim for housing misclassification, Plaintiff 'must allege that [Defendants'] . . . misclassification of him was due to deliberate indifference. That is, he must allege that [Defendants] knew of and disregarded a substantial risk of serious harm.'" *Truehill*, 2022 WL 2921228, at *9 (quoting *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017)); *see also Siggers v. Forrest Cnty., Miss.*, No. 2:16-cv-00104-KS-MTP, 2020 WL 8919470, at *2 n.6 (S.D. Miss. Nov. 20, 2020), *report and recommendation adopted by* 2021 WL 1083178, at *1 (S.D. Miss. Mar. 19, 2021). But Plaintiff has not alleged that Defendants knew his classification with convicted inmates posed a substantial risk of serious harm to him. Though he claims another inmate once "tried to stab [him]," [32] at 45, it is unclear whether the assailant was a convicted inmate, and Plaintiff does not allege that these Defendants knew about and disregarded their knowledge of the assault. *See id.* (identifying unnamed "COs" as participating in this

altercation). Thus, Plaintiff "has not linked [the] alleged misclassification to [Defendants'] deliberate indifference toward that risk." *See Alderson*, 848 F.3d at 420.

What is more, Plaintiff "does not allege that his housing assignment was made with an intent to punish him." *See Galo v. Gusman*, 13-4874-SS, 2014 WL 1689305, at *3 (E.D. La. Apr. 29, 2014); *see also Burciaga v. Cnty. of Lenawee*, 123 F. Supp. 2d 1076, 1078 (E.D. Mich. 2000) ("[T]he overwhelming weight of persuasive authority holds that unless the state has an intent to punish, or at least displays an indifference toward potential harm to an inmate, pre-trial detainees have no due process right to be housed separately from sentenced inmates."). "Without any such allegations, much less any competent summary judgment evidence in support of any such allegations, this Court has no basis whatsoever for concluding that [P]laintiff's rights were violated or that any genuine issue of material fact remains in dispute." *See Galo*, 2014 WL 1689305, at *3. The undersigned recommends that this claim be dismissed with prejudice.

### iv.    *Sexual Assault*

Plaintiff's claim that he was sexually assaulted by Sergeant Smith is properly construed as an episodic-act-or-omission claim. *See Scott*, 114 F.3d at 53. To cover all bases, the undersigned will analyze this claim under the Fourteenth Amendment (governing straightforward sexual assaults) and the Fourth Amendment (governing unreasonable searches and seizures).

Under the Fourteenth Amendment, it is unclear what standard applies "in a case involving a guard's sexual assault of a [pretrial] detainee." *Rehart v. Tom Green Cnty. Jail*, No. 6:22-cv-00071-BU, 2025 WL 836600, at *8 (N.D. Tex. Jan. 27, 2025), *report and recommendation adopted by* 2025 WL 835336, at *1 (N.D. Tex. Mar. 17, 2025). Some cases imply that courts should use the deliberate-indifference standard, *e.g., Campos v. Webb Cnty., Tex.*, 597 F. App'x

787, 792-93 (5th Cir. 2015), while other authority "applie[s] the excessive force standard," *Rehart*, 2025 WL 836600, at *8 (collecting cases). Yet the Court need not decide the appropriate standard here. Both require a showing that whatever injury occurred because of the alleged sexual assault was objectively unreasonable or harmful, *see id*. at *8-9 & n.10—a standard that Plaintiff cannot satisfy.

"Though the Fourteenth Amendment protects a detainee's right to bodily integrity, not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Id*. at *9 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "Rather, courts must engage in a fact specific inquiry to determine whether the defendant's conduct was 'incompatible with the evolving standards of decency.'" *Id*. (quoting *Hudson*, 503 U.S. at 10). "The alleged sexual abuse must be severe or repetitive to meet this objective element." *Id*. (quotation omitted). In *Rehart*, the court dismissed a sexual-assault claim against an officer who allegedly "touched [an inmate's] chest" and "pushed his pelvi[s] into [the inmate's] rear end." *Id*. The court reasoned that "the contact did not go beyond [the officer] contacting [the inmate's] body and the incident was not repeated." *Id*.; *see also Ashley v. Corley*, No. 24-cv-920, 2024 WL 5132173, at *2 (W.D. La. Nov. 25, 2024) (finding no constitutional violation when the plaintiff "describe[d] only two brief incidents" in which both he and the officer "were . . . fully clothed . . . , and [the plaintiff] did not allege any form of physical injury"), *report and recommendation adopted by* 2024 WL 5130864, at *1 (W.D. La. Dec. 16, 2024).

The undisputed evidence shows that Sergeant Smith did not touch Plaintiff *at all* during the strip search in the broom closet. Thus, any sexual harassment that Plaintiff believes he suffered was not of the kind necessary to prove a constitutional violation under the Fourteenth Amendment.

*See, e.g., DeRouen v. Aransas Cnty. Det. Ctr.*, No. 2:22-cv-00292, 2024 WL 4364415, at *11-12(S.D. Tex. Aug. 30, 2024) (finding an officer was entitled to qualified immunity where the evidence showed "that no assault, much less any sexual assault, occurred"), *report and recommendation adopted by* 2024 WL 4369706, at *1 (S.D. Tex. Oct. 1, 2024).

This claim fares no better under the Fourth Amendment. *See Parker v. Woods*, 834 F. App'x 92, 95 (5th Cir. 2020) (liberally construing *pro se* allegations regarding a cavity search as raising a Fourth Amendment claim, despite the inmate categorizing it as a sexual assault). "The Fourth Amendment requires that searches and seizures within the prison context are reasonable under all the facts and circumstances in which they are performed." *Rehart*, 2025 WL 836600, at *10. "Courts must analyze what constitutes reasonable on a case-by-case basis, balancing the need for the particular search against the invasion of the prisoner's personal rights." *Id.* "In striking this balance, the courts must consider (1) the scope of the intrusion, (2) the manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it is conducted." *Id.* "In light of the great deference courts are required to afford [prison] administrators, the reasonableness standard is not a difficult one to meet." *Id.*

The balance of these factors indicates that Sergeant Smith strip searching Plaintiff in the broom closet was reasonable under the circumstances. Plaintiff was accused of possessing a weapon, so two male officers escorted him to a private room and allowed him to disrobe on his own. [121-1] at 1. The officers then conducted a visual search of Plaintiff's clothing and person for weapons and contraband, before concluding that none were present. *Id.* Again, it is undisputed that Sergeant Smith did not physically touch Plaintiff during this incident, suggesting the manner of the search was not unreasonable. Accordingly, the undersigned recommends that Plaintiff's

sexual assault claim against Sergeant Smith be dismissed with prejudice.

**IV.    The undersigned recommends that Plaintiff's excessive-force claims related to the incidents of macing and/or tasing survive summary judgment and proceed to trial.**

Only two claims remain: Plaintiff's claims that Sergeant Smith maced and/or tased him on two separate occasions—(1) once after a dispute over the discontinuation of his medication in November 2022 and (2) again after a dispute about his housing in January 2023.[6] The County Defendants did not move for summary judgment regarding the November 2022 use-of-force incident, [118] at 5, because video footage of that incident "does not show . . . [Plaintiff's] actions just prior to the moment that he was sprayed," *id*. at 14. Because this claim turns "on the relative credibility of the witnesses," *id*., the undersigned recommends that it proceed to trial.

The County Defendants contend that the January 2023 use-of-force incident is not before the Court, so no summary-judgment briefing or decision by the Court is necessary. *Id*. at 2. The undersigned disagrees. The County Defendants cite an earlier Report and Recommendation [60] and Order [65] as establishing the definitive universe of claims at issue here. That Report and Recommendation recounted the operative allegations thus:

> Plaintiff says that Smith wrongfully strip searched and "sadistically attacked" him while he was in custody—including what Plaintiff characterizes as a sexual assault in a broom closet. [12] at 3-4; (Tr. 52-53). Plaintiff also maintains that Smith's use of "chemical agents against [him]" constitutes the "excessive use of force." [33] at 1, 9.

[60] at 4. The Court later determined that "the report and recommendation correctly identifie[d] the claims before the court in this case." [65] at 2 n.4. Neither the Report and Recommendation [60] nor the Order [65] separate the use-of-force incidents into two separate claims, but the

---

[6] For purposes of this Section, and in the interest of clarity, the undersigned will adopt the County Defendants' timeline of events—mindful that Plaintiff's recitation of the timing varies. *See supra* n.4.

pleadings and the testimony at the Omnibus Hearing clearly identify two macing-and-tasing episodes. In response to a questionnaire propounded by the Court, on January 24, 2023, Plaintiff identified use-of-force incidents on "11/30" and "1/8." [12] at 2-3. He then testified about both incidents at the Omnibus Hearing on April 25, 2023. [32] at 53-56.

Counsel for the County Defendants have had access to this record since being served with process, and he was in fact present at (and participated in) the Omnibus Hearing. That there are two episodes of macing and/or tasing at issue should come as no surprise. Thus, the undersigned recommends that Plaintiff's claim about the January 2023 use-of-force incident proceed to trial as well.

## IV. RECOMMENDATION

The Motion [113] to Stay Case filed by Defendants Lauderdale County, Billie Sollie, Sergeant Smith, and Sergeant Allen Wyman should be denied as moot. The County Defendants' Motion [117] for Partial Summary Judgment and Supplemental Motion [121] for Partial Summary Judgment should be granted. Plaintiff Braz Coleman's claims against Lauderdale County, Billie Sollie, and Sergeant Allen Wyman should be dismissed with prejudice, along with his sexual-assault claim against Sergeant Smith. Plaintiff's two excessive-force claims against Sergeant Smith regarding macing and/or tasing should proceed to trial.

## V. NOTICE OF RIGHT TO APPEAL/OBJECT

Within fourteen days of being served with a copy of this Report and Recommendation, any party may serve and file written objections with the Clerk of Court. An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. Within seven days of service of the objections, the opposing party must either serve and file a response or

notify the District Judge that he does not intend to respond to the objections. L. U. Civ. R. 72(a)(3).

The District Judge shall make a *de novo* determination of those portions of the Report and Recommendation to which objection is made. The District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1).

The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *See Wallace v. Miss.*, 43 F.4th 482, 494-95 (5th Cir. 2022) (collecting cases).

**SIGNED,** this 8th day of July, 2025.

/s/ *Robert P. Myers, Jr.*

ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE